THE BOARD OF EDUCATION OF CARRIER MILLS-STONEFORT COMMUNITY UNIT SCHOOL DISTRICT NO. 2 OF SALINE COUNTY, Plaintiff-Appellant, v. THE REGIONAL BOARD OF SCHOOL TRUSTEES OF GALLATIN, HARDIN, POPE AND SALINE COUNTIES, *et al.*, Defendants-Appellees.

Fifth District   No. 5—86—0584

Opinion filed August 10, 1987.—Rehearing denied September 21, 1987.

James W. Sanders, of James W. Sanders & Associates, of Marion, for appellant.

Nina Thompson Williams, of Harrisburg, for appellees Mark Guard and Jan Guard.

No brief filed for appellees Regional Board of School Trustees of Gallatin, Hardin, Pope and Saline Counties and Board of Education of Harrisburg Community Unit District No. 3 of Saline County.

60

JUSTICE WELCH delivered the opinion of the court:

This is an appeal from an administrative review (Ill. Rev. Stat. 1985, ch. 110, par. 3—101 *et seq.*) decision of the circuit court of Saline County affirming the decision of defendant regional board of school trustees of Gallatin, Hardin, Pope and Saline counties (regional board). The regional board approved a petition by defendants Mark Guard and Jan Guard for detachment of their property from the Carrier Mills-Stonefort Community Unit School District No. 2 of Saline County (the Carrier Mills district) and annexation of their property into the Harrisburg Community Unit School District No. 3 of Saline County (the Harrisburg district).

On May 1, 1985, defendants Mark Guard and Jan Guard petitioned the regional board to detach approximately one acre of real estate owned by the Guards and including their residence from the Carrier Mills district and to annex it to the Harrisburg district. A map accompanying the Guards' petition indicated the land in question was adjacent to the existing boundary between the two districts. The regional board held a hearing on the petition on August 6, 1985.

Mark Guard testified as follows: He lived about four miles from Harrisburg and a mile and a half from Carrier Mills; neither of his two children, ages four years and four months, had yet started school; he worked about halfway between Harrisburg and Marion, leaving for work at 10:30 p.m. and returning home at 7:30 a.m.; his work schedule had been this way since January and it was subject to change, but he did not know when; before January he was on the day shift; he attended a college located about 50 miles north of his residence; his present schedule thus required he be absent from home from 4 p.m. to 10:30 a.m. twice a week; he never lived anywhere but Harrisburg except when he and his wife moved to their present address four years ago; the rest of his family lived in Harrisburg; he was a Jaycee in Harrisburg, socialized in Harrisburg and was a member of a Harrisburg church; his four-year-old attended a Harrisburg nursery school; the children's longtime trusted sitter lived in Harrisburg; the Guards had no significant contacts with the city or the people of Carrier Mills; it would be difficult to transport the children to activities in Carrier Mills because it would be out of the way for the Guards; a Harrisburg school bus passed the Guard home every day; when the Guards bought the property they thought it was in the Harrisburg school district; he was of the opinion that his children would get a better education in Harrisburg because of a better opportunity to participate in extracurricular activities, both because there were more extracurricular activities and because it would be easier to transport the

children there on the Guards' schedules; he had not investigated the curriculum of either school district.

Jan Guard testified: She worked at Angelo's, her father's restaurant in Harrisburg, and as a bookkeeper at a Harrisburg liquor store; her father recently had heart surgery, and Mrs. Guard took care of the business for him; Mrs. Guard had no relatives in the Harrisburg area besides her parents; Mrs. Guard would pick up and deliver the children most of the time, and her schedule at the restaurant was irregular and demanding; it would be difficult to arrange to pick up the children at the Carrier Mills school or at the school bus stop due to her schedule; she had lived in Harrisburg almost all her life until moving to her present home. Mrs. Guard's testimony regarding the relative advantages and conveniences of having her children attend school in Harrisburg was essentially similar to Mr. Guard's; she had not investigated the Harrisburg school curriculum.

Larry Hyde, principal at the Carrier Mills grade school, testified at length regarding the advantages of the curriculum at the Carrier Mills school and compared it to some extent to the programs at Harrisburg. According to Hyde, the student-to-teacher ratio was about 23-to-1 and kindergarten classes ran from 8:10 a.m. to 11 a.m. for the early class and from 11 a.m. to 3:13 p.m. for the late class.

Dr. Charles Johnson, superintendent of schools at Carrier Mills school district, described the Carrier Mills school programs and extracurricular activities at length. According to Johnson the high school's student-to-teacher ratio was 15-to-1. Johnson testified that in the last preceding year, for the first time, the district did not have to borrow any funds and ended the year with a surplus of $85,000; the district did not expect to borrow in the current year; this was unusual for a Saline County school district. Among the exhibits in the record is a summary of the financial effect anticipated with respect to the two school districts should the Guards' petition be granted; it indicates the tax loss to the Carrier Mills district and the tax gain to the Harrisburg district in the 1984-85 school year would be $256.14, and that the Harrisburg district was expected to operate "in the red" and the Carrier Mills district "slightly in the red or at a break even point." The report also indicates the total assessed valuation of the Harrisburg district was $59,945,702, and total assessed valuation for the Carrier Mills district was $11,382,118.

After hearing the evidence, the regional board considered the petition in closed session in the presence of an attorney and the regional superintendent of schools for Gallatin, Hardin, Pope and Saline counties over the objection of counsel for the Carrier Mills district. The re-

gional board returned to open session and, by unanimous vote of the members present, granted the Guards' petition.

The board of education of the Carrier Mills district sought administrative review in the circuit court of Saline County, alleging the decision of the regional board was contrary to the manifest weight of the evidence and that the board violated the Open Meetings Act (Ill. Rev. Stat. 1985, ch. 102, par. 41 *et seq.*) by deliberating in closed session and in the presence of an attorney and the regional superintendent of schools. The circuit court concluded the decision of the regional board was not against the manifest weight of the evidence, and that while the regional board "may well have" violated the Open Meetings Act by deliberating the matter in closed session, the violation did not invalidate the regional board's action on the petition. The Carrier Mills district appealed to this court.

Review of the decision of the regional board is subject to the Administrative Review Law. (Ill. Rev. Stat. 1985, ch. 122, par. 7—2.7.) On review the findings and conclusions of an administrative agency on questions of fact shall be held to be *prima facie* true and correct. (Ill. Rev. Stat. 1985, ch. 110, par. 3—110.) The obligation of a regional school board in considering a proposed boundary change is to hear evidence as to the school needs and conditions of the territory in the area within and adjacent thereto and as to the ability of the districts affected to meet the standards of recognition as prescribed by the State Board of Education, and to take into consideration the division of funds and assets which will result from the change of boundaries, and to determine whether it is to the best interests of the schools of the area and the educational welfare of the pupils that such change in boundaries be granted. Ill. Rev. Stat. 1985, ch. 122, par. 7—6.

■ The Guards as petitioners had the burden to show that it was in the best interests of the area schools and the pupils' welfare to allow a change of boundaries. It was their burden to support their petition with substantial evidence. (*Fixmer v. Regional Board of School Trustees* (1986), 146 Ill. App. 3d 660, 664, 497 N.E.2d 152, 155.) In *Oakdale Community Consolidated School Dist. No. 1 v. County Board of School Trustees* (1957), 12 Ill. 2d 190, 145 N.E.2d 736, our supreme court stated:

> "Orders effecting a change of boundary must be made in conformity with the standards prescribed by the legislature and designed with an eye to the educational welfare of the children residing in all the territory to be affected. The correct rule is expressed in *Trico Community Unit School Dist. No. 176 v. County Board of School Trustees*, 8 Ill. App. 2d 494, [131

N.E.2d 829, 830], where the court observed that 'although the residents of territories within the district may initiate a petition for detachment because of personal desires or convenience, much more is needed to support the board's decision to change established boundaries. The welfare of the affected districts and their pupils as a whole must control rather than the wishes of a few, and such petitions granted only where the benefit derived by the annexing and affected areas clearly outweighs the detriment resulting to the losing district and the surrounding community as a whole.'

The reason for such a rule is found in the method of education thought desirable by the people of this State. Although private schools exist, the constitution ordains that the legislature shall provide a system of 'free' schools. As long as such a system prevails, individual choice in the matter of paying the price of schools is subordinated to the will of a majority within boundaries determined in the manner prescribed by statute. The General Assembly has provided a method whereby those of existing districts may be changed, and has expressed the factors to which consideration must be given in a proceeding of this kind. Although the consent of two thirds of the voters is required to initiate the proceeding, such consent is not sufficient to warrant the granting of relief. The statute contemplates such an order only if the division of funds and assets will not jeopardize the educational resources of existing districts and if the change will serve the best interests of the pupils in the entire area. School districts are not to be changed, therefore, solely by the shopping, banking or school preferences of those residing in particular segments thereof." (12 Ill. 2d 190, 193-94, 145 N.E.2d 736, 737-38.)

The rule which accords a *prima facie* validity to administrative decisions does not relieve a court of the important duty to examine the evidence and to set aside an order which is unsupported in fact. Our administrative review act does not require judicial recognition of an order which is against the manifest weight of the evidence, nor does the law allow a stamp of approval to be placed on the findings of an administrative agency merely because such agency heard the witnesses and made the requisite findings. 12 Ill. 2d 190, 195, 145 N.E.2d 736, 738.

▪ ■ We cannot conclude the decision of the regional board was supported by the evidence. What the Guards' testimony demonstrated primarily was their personal preference to associate with the Harris-

burg district. Neither of the Guards demonstrated any familiarity with the curricula of the respective schools. While some convenience in their present work schedules was also shown, their convenience was but one factor to consider. (*Eble v. Hamilton* (1977), 52 Ill. App. 3d 550, 554, 367 N.E.2d 788, 791.) The distance from the Guards' home to the respective schools, a factor also entitled to consideration (*Fixmer v. Regional Board of School Trustees* (1986), 146 Ill. App. 3d 660, 497 N.E.2d 152; *Eble v. Hamilton* (1977), 52 Ill. App. 3d 550, 367 N.E. 2d 788), was not shown, though it was shown that the city of Harrisburg is much farther from the Guards' home than is Carrier Mills. It is unusual to find a case in which the petitioners wish to detach from the district having the closer school and annex to the more distant school (see *Eble v. Hamilton* (1977), 52 Ill. App. 3d 550, 553, 367 N.E.2d 788, 790), as is the apparent case here. In *Manning v. Regional Board of School Trustees* (1981), 92 Ill. App. 3d 945, 416 N.E.2d 381, cited by the Guards, the petitioners sought annexation to a district having a nearer school.

■ Significantly, the Guards' personal preference could only be accommodated at the expense of the relatively small Carrier Mills district. While the absolute gain in assessed valuation for the Harrisburg district was the same as the loss in assessed valuation for the Carrier Mills district, the loss to the Carrier Mills district as a percentage of total assessed valuation was much greater than the percentage gain to the Harrisburg district. Thus the relative loss to the smaller district is substantial and the relative gain to the annexing district relatively inconsequential. In any event, mere proof of no detriment to the losing district is insufficient to support a petition in the absence of an evident benefit. (*Eble v. Hamilton* (1977), 52 Ill. App. 3d 550, 553-54, 367 N.E.2d 788, 791.) No substantial gain to anyone other than the Guards from the detachment and annexation is demonstrated in the administrative record. As noted in *Oakdale Community Consolidated School District No. 1 v. County Board of School Trustees* (1957), 12 Ill. 2d 190, 145 N.E.2d 736, it is the welfare of the pupils and the districts as a whole which must govern in the consideration of an annexation petition. See also *Board of Education v. Regional Board of School Trustees* (1980), 86 Ill. App. 3d 230, 232-33, 407 N.E.2d 1084, 1085-86 (which also concerned a petition to annex to a district having a closer school).

Our conclusion that the decision of the regional board was contrary to the manifest weight of the evidence renders it unnecessary to consider the remaining contentions raised by the Carrier Mills district. The judgment of the circuit court of Saline County affirming the

decision of the regional board of school trustees of Gallatin, Hardin, Pope and Saline counties is reversed.

Reversed.

KARNS, P.J., and KASSERMAN, J., concur.