EDWARD SKOLEK *et al.*, Plaintiffs-Appellees, v. UTICA GRADE SCHOOL DISTRICT No. 135, Defendant-Appellant (La Salle County *et al.*, Defendants).

Third District No. 3—91—0976

Opinion filed August 4, 1992.

John A. Relias, of Vedder, Price, Kaufman & Kammholz, of Chicago (C. Elizabeth Belmont, of counsel), for appellant.

White, Marsh, Anderson, Howarter, Brusatte & Vickers, of Ottawa (James L. Brusatte, of counsel), for appellees.

JUSTICE McCUSKEY delivered the opinion of the court:

The plaintiffs filed a petition with the La Salle County Regional Board of School Trustees (Regional Board) to detach and annex real estate. The plaintiffs sought the Regional Board's approval to detach their real estate from the Utica Grade School District No. 135 (Utica) and to annex it to the Waltham Grade School District No. 185 (Waltham). The Regional Board denied both the plaintiffs' petition and their petition for rehearing. The La Salle County circuit court re-

versed. The circuit court found that the Regional Board's determination was against the manifest weight of the evidence. Utica appeals. We affirm because we agree with the findings of the circuit court.

The plaintiffs, Edward and Jane Skolek, have two small children. Emily, age six, was born on April 10, 1986, and attended Utica kindergarten last year. Justin, age five, was born on August 7, 1987, and will be attending school this year.

On March 19, 1991, the Skoleks filed their petition with the Regional Board to detach and annex their real estate. Their major concern is for the safety of their small children, who must travel to Utica down a long, narrow, steep, and declining road. This road has no sidewalks and passes down into an industrial area and across railroad tracks. Utica provides no bus service for the Skolek children. The Skoleks live at the very edge of Utica. Waltham provides bus service which goes immediately by the Skoleks' home. All of the Skoleks' immediate neighbors attend school at Waltham. The Skolek property contains 13.3 acres and is part of the rural area located north and outside of the village limits of Utica. The Skoleks have lived there the past three years.

The plaintiffs' petition did not challenge the quality of education offered by Utica. Also, the petition did not allege that the Skolek children would receive a better education at Waltham. The quality of education offered by the two school districts is not an issue in this appeal.

Plaintiffs Bernard and Deloris Hettel live on 28.67 acres in the rural area adjoining the north side of the Skolek property. The Hettels no longer have any school-aged children. They joined the petition at the Skoleks' request and are nominal plaintiffs. However, the Hettels share the Skoleks' concern for the safety of the small children.

In 1990, the Skoleks paid $372.12 in real estate taxes to Utica. That same year, the Hettels paid Utica $460.10 in real estate taxes. Utica does not claim the loss of plaintiffs' real estate taxes would affect the quality of their educational system. Therefore, Utica's loss of income is not an issue in this appeal.

On April 1, 1991, the plaintiffs presented their petition to the Regional Board at a public hearing. Jane Skolek testified that she works Monday, Tuesday, and Thursday from 8 a.m. to 4:30 p.m. in the business office at Ottawa Community Hospital. She leaves for work around 7:40 a.m. and arrives home at approximately 5 p.m. Jane testified that her husband, Edward Skolek, works a swing shift for Illinois Cement Company. She said that his work schedule changes weekly and he leaves for work at various times of the day. Jane testi-

fied that Utica opens its school at 8:30 a.m. Therefore, because of their work schedules, the Skoleks would be unable to transport their children to and from Utica.

Jane testified that the children would have to walk down a narrow, steep highway with no sidewalks to get to Utica. She noted that this road also passes over railroad tracks and through an industrial area used by heavy trucks. She said that the children's unsupervised one-way trip to Utica would be approximately one-half to three-quarters of a mile. Also, Jane indicated that no one would be home on most days when Emily returned from school. All of these safety hazards cause the Skoleks great concern.

James Beverage, Utica's superintendent, was the only witness to testify in opposition to the petition. He testified, "I can understand the situation that this couple puts [sic] themselves into." He also admitted that Utica had no bus service for the Skolek children. Beverage commented regarding the hill by saying, "Now, as far as the hill and safety—um—there is a tract there." Later, he said, "but I do understand with their situation about the hill."

Beverage's opposition to plaintiffs' petition was based solely on his concern, as a first-year superintendent, that he was afraid of setting precedent. He said, "And I point out that because if this is a situation that is involved, then we will have many petitions coming in here based solely on a reduced tax rate that person may be getting in one tax situation as in another." Beverage presented no testimony to contradict the Skoleks' safety concern.

Jane Skolek also testified regarding Utica's school lunch program. She noted that most of Utica's school children eat their noon lunch at home. This is because almost all of the students live in the Village of Utica, which is a short distance from the school. Beverage acknowledged this fact. However, Beverage did note that Utica has a minimal lunch program used by about 30 to 40 students, who eat their lunch under supervision at the school. If the Skolek children eat lunch at home, like the majority of Utica's students, then they would be compelled to cross the railroad tracks and travel the dangerous road two more times each school day. However, based on all the circumstances, the Skolek children will be unable to go home to eat lunch.

Phyllis Mertes testified that she has been Emily and Justin Skolek's daily baby-sitter for the past three years. Phyllis says Emily and Justin are comfortable in her home environment and are best friends with her two children, Maria and Eric. Phyllis lives in the Waltham district about 1½ miles from the Skoleks. The Waltham school bus stops in front of her home. Phyllis testified that she could watch

Emily and Justin each morning and afternoon while the Skoleks are working. Her testimony indicated that if the petition was granted, Emily would catch the Waltham bus at Phyllis' home. Also, the Waltham bus would drop Emily off at Phyllis' home after school. The testimony indicated that until Justin begins school, Phyllis will continue to baby-sit him. If the petition was granted, Phyllis stated that Justin's school schedule would be the same as Emily's.

Jane Skolek also testified that most of her children's friends attend Waltham. She said they have no baby-sitters or close friends in Utica. Before moving to their current home, the Skoleks lived for five years in Seneca Manor, which is located next to Utica in the Waltham district.

On April 29, 1991, the Regional Board, without explanation, concluded "that it is in the best interest of the school districts and of the educational welfare of the pupils affected hereby that such change in the boundaries be denied."

On May 9, 1991, plaintiffs filed a petition for rehearing with the Regional Board. On June 19, 1991, the Regional Board heard the plaintiffs' arguments in support of their petition for rehearing. The Regional Board denied the petition for rehearing without comment.

On June 28, 1991, the plaintiffs filed a complaint for administrative review in the circuit court of La Salle County. The plaintiffs alleged that the decision of the Regional Board was against the manifest weight of the evidence. Utica responded by arguing that the plaintiffs had failed to meet their burden of proof, and therefore, the decision of the Regional Board should be affirmed.

The circuit court reversed the Regional Board's decision by finding the "decision below was against the manifest weight of the evidence and that the petitioners met their burden below." We agree.

Section 7—6 of the School Code (Ill. Rev. Stat. 1989, ch. 122, par. 7—6) sets forth the standards to be considered by the Regional Board in determining whether to permit a change in school boundaries. In pertinent part, the statute reads as follows:

> "The *** boards of school trustees *** shall hear evidence as to the school needs and conditions of the territory in the area within and adjacent thereto and as to the ability of the districts affected to meet the standards of recognition as prescribed by the State Board of Education, and shall take into consideration the division of funds and assets which will result from the change of boundaries and shall determine whether it is to the best interests of the schools of the area and the educational

welfare of the pupils that such change in boundaries be granted ***." Ill. Rev. Stat. 1989, ch. 122, par. 7—6.

It is the function of a regional board of school trustees and not a reviewing court to make findings of fact. (*School District No. 79 v. County Board of School Trustees* (1954), 4 Ill. 2d 533, 123 N.E.2d 475.) A reviewing court will not set aside a regional board's determination unless it is contrary to the manifest weight of the evidence. *Board of Education of Golf School District No. 67 v. Regional Board of School Trustees* (1982), 89 Ill. 2d 392, 433 N.E.2d 240.

Our scope of review extends to all questions of law and fact presented by the record, but the factual findings of the administrative agency are held to be *prima facie* true and correct. (*Zejmowicz v. County Board of School Trustees* (1971), 133 Ill. App. 2d 735, 272 N.E.2d 783.) Our supreme court has said, however, that this rule does not relieve a reviewing court of its duty to examine the evidence in an impartial manner and to set aside an order which is unsupported in fact. *Carver v. Bond/Fayette/Effingham Regional Board of School Trustees* (1992), 146 Ill. 2d 347, 586 N.E.2d 1273.

The supreme court has interpreted section 7—6 of the School Code to mean that petitions for detachment and annexation should be granted only where the overall benefit to the annexing district and the detachment area clearly outweighs the resulting detriment to the losing district and the surrounding community as a whole. *Oakdale Community Consolidated School District No. 1 v. County Board of School Trustees* (1957), 12 Ill. 2d 190, 145 N.E.2d 736.

Very recently, our supreme court elaborated on how the regional boards should apply the benefit-detriment test set forth in *Oakdale*. The court, on January 30, 1992, in *Carver*, stated as follows:

"In applying this benefit-detriment test, regional boards, and the courts reviewing their decisions, are to consider differences between school facilities and curricula, the distances from the petitioners' homes to the respective schools, the effect detachment would have on the ability of either district to meet State standards of recognition, and the impact of the proposed boundary change on the tax revenues of both districts. [Citation.] They also may consider the 'whole child' and 'community of interest' factors: the identification of the petitioning territory with the district to which annexation is sought, and the corresponding likelihood of participation in school and extracurricular activities. [Citation.] Although the personal desires of the petitioning parents may be taken into account, more than personal preference is needed to support a change in school dis-

trict boundaries. [Citations.]" *Carver*, 146 Ill. 2d at 356, 586 N.E.2d at 1277.

The plaintiffs introduced no evidence before the Regional Board regarding the following factors: (1) the differences between school facilities and curricula; (2) the effect detachment would have upon the ability of either district to meet State standards of recognition; and (3) the impact the proposed boundary changes would have on the tax revenues of each district. However, we note from the record that Utica's tax loss would have no effect on the district. For our inquiry, we believe these factors are unnecessary and therefore we will not address them.

It is clear from the record that the Regional Board did not properly apply the benefit-detriment test stated in *Carver*. The Regional Board clearly ignored the compelling safety hazard that the hill poses to the Skolek children. Also, we find that the Regional Board has not properly considered the "whole child" and "community of interest" factors in light of the evidence the plaintiffs presented.

The record is uncontradicted that the Skoleks' community of interest lies in Waltham. The location of the Skoleks' rural property is contiguous with Waltham. It is in Waltham where the Skoleks find all their friends, the children's baby-sitter, and the Waltham school bus, which is absolutely necessary for the safety of Emily and Justin. The Skoleks' contacts with Utica are minimal. The children's natural community center is in rural Waltham, which mirrors their own rural setting.

Detachment of the plaintiffs' property will not harm Utica's tax base. Detachment, in fact, will make the Utica boundary more compact by removing the plaintiffs' rural island. The annexation of plaintiffs' property to Waltham will cause the boundary lines to be more uniform and compact.

Due to the Skoleks' ties with Waltham, there is a greater likelihood that Emily and Justin will participate in academic and extracurricular activities at Waltham to a far greater extent than if they attend Utica. The comradeship of being involved in school with close friends should facilitate participation in sports and other extracurricular activities. If a child attends a school in his natural community, it enhances not only his educational opportunity but encourages his participation in social and extracurricular activities that figure importantly in the "whole child." *School District No. 106 v. County Board of School Trustees* (1964), 48 Ill. App. 2d 158, 198 N.E.2d 164.

The Skolek children should increase their school participation at Waltham through the use of safe bus transportation. This clearly will

give the children and their parents the peace of mind which should improve the children's educational opportunities and nurture development of the "whole child."

The benefit to be derived from annexing the plaintiffs' property to Waltham is great. The detriment to Utica is slight. Superintendent Beverage's only concern was that detachment would set a precedent. We doubt that under these unique circumstances any precedent will be set in Utica.

Even though the Skoleks' personal preference is to be transferred to Waltham, it is understood that their preference cannot alone support the transfer of their property. However, there was sufficient evidence established to support their requested annexation and detachment petition. We find the plaintiffs met their burden of proof before the Regional Board.

Accordingly, we hold that the determination of the Regional Board denying plaintiffs' petition was against the manifest weight of the evidence. The judgment of the circuit court of La Salle County is affirmed.

Affirmed.

SLATER and STOUDER, JJ., concur.