DAN SEELHOEFER et al., Appellees, v. REGIONAL BOARD OF SCHOOL TRUSTEES OF CLINTON AND WASHINGTON COUNTIES et al., Appellants.

Fifth District    No. 5—93—0576

Opinion filed September 15, 1994.

Raymond A. Hauser and Daniel M. Boyle, both of Scariano, Kula, Ellch & Himes, Chartered, of Chicago Heights, for appellants.

Richard A. Kuiken, of Carlyle, for appellees.

JUSTICE CHAPMAN delivered the opinion of the court:

Appellees brought a petition seeking administrative review of the decision of the Regional Board of School Trustees of Clinton and Washington Counties (the Regional Board) which denied appellees' petition to detach territory from Carlyle Community Unit School

District No. 1 and annex it to Bartelso Elementary School District No. 57 and Central Community High School District No. 71. The circuit court reversed the decision of the Regional Board and entered judgment for appellees. We affirm.

Appellants first argue that the circuit court lacked jurisdiction to consider the petition. Second, they contend that the circuit court erred in holding that the Regional Board's denial of the petition for detachment and annexation was against the manifest weight of the evidence.

Appellants claim that the circuit court lacked jurisdiction because appellees' first amended petition did not satisfy article 7 of the Illinois School Code (School Code) (105 ILCS 5/7—1 (West 1992)), which provides for detachment of a territory from an existing school district and annexation to another district within one county upon petition signed by two-thirds of the legal voters residing within the affected area. Article 7 further requires:

"Each page of the circulated petition shall include the full prayer of the petition, and each signature contained therein shall match the official signature and address of the registered voters as recorded in the office of the election authority having jurisdiction over the county. Each petitioner shall also record the date of his signing. Each page of the petition shall be signed by a circulator who has witnessed the signature of each petitioner on that page. The length of time for signatures to be valid, before filing of the petition, shall not exceed 6 months." 105 ILCS 5/7—1 (West 1992).

Appellants argue that, although appellees' first amended petition contains two pages of signatures, only the second page is signed by the circulator. Therefore, they contend that the first page of the first amended petition fails to comply with that part of section 7—1 of the School Code which requires that "[e]ach page of the petition shall be signed by a circulator who has witnessed the signature of each petitioner on that page." 105 ILCS 5/7—1 (West 1992).

■ Even if we were to disregard the signatures on the first page of the petition, there would still be a sufficient number of certified signatures on the second page. The record reveals that six families resided within the affected territory and that all of the adults except one, Sylvia Schlott, signed the petition. The certificate of the Clinton County Clerk shows that Sylvia Schlott and 11 of the signers of the petition were registered voters at the time of the filing of the petition. The clerk's certificate omitted Roland Trame from the list of registered voters.

We note that if Roland Trame was a registered voter, nine signatures would be needed on the petition in order to comply with

the statute, since the number of registered voters would be 13. The page certified by the circulator contained nine signatures, including that of Roland Trame, thus meeting the two-thirds requirement.

If Roland Trame was not a registered voter, then there would be 12 registered voters in the affected territory. Thus, eight signatures would be needed in order to comply with the statute. The second page of the petition contained eight certified signatures, excluding Roland Trame. Therefore, despite the fact that the first page of the petition was not signed by the circulator, the two-thirds requirement of section 7—1 was satisfied by the signatures contained on the second page.

Appellants contend that the second page of the petition is also invalid because it fails to meet the statutory requirement that the full prayer of the petition be stated on each page. The appellees stated the full prayer only on the first page of the petition and stapled the first and second pages together. However, not every irregularity in a petition is fatal to jurisdiction. (See *Board of Education of Wapella Community Unit School District No. 5 v. Regional Board of School Trustees* (1993), 247 Ill. App. 3d 555, 617 N.E.2d 442; *Sakonyi v. Lindsey* (1994), 261 Ill. App. 3d 821.) Courts should avoid hypertechnical reasons for avoiding decisions made on the merits of a case when neither party suffered any delay or harm as a result of the technical violation. *Worthen v. Village of Roxana* (1993), 253 Ill. App. 3d 378, 623 N.E.2d 1058.

We believe that appellees substantially fulfilled the requirements of the School Code. An examination of the petition reveals that if each page contained the full prayer and the circulator's sworn verification, there would be space left on the $8^1/2$ by 11 form for the signature of one petitioner, at most. Further, if the legal description of the territory were four lines longer, compliance with the statute would be impossible. Therefore, common sense dictates that we allow appellees to state the full prayer on the first page of the petition and bind it to the second page of signatures.

We, therefore, conclude that appellants' argument that the Regional Board and the circuit court lacked jurisdiction of the subject matter and the parties because appellees' petition failed to meet the prerequisites of the School Code is without merit.

Next, appellants argue that the circuit court lacked jurisdiction because it failed to retain jurisdiction over the complaint. On June 30, 1993, the circuit court remanded proceedings to the Regional Board of School Trustees for further factual findings. Appellants argue that a circuit court loses jurisdiction over an administrative review proceeding if it remands the proceedings to the administrative

agency without an express retention of jurisdiction, citing *Creamer v. Police Pension Fund Board* (1978), 69 Ill. App. 3d 792, 387 N.E.2d 711. Appellants argue that *Creamer* held that a party who wishes to contest the finding of an administrative agency after a remand to that agency from the circuit court must file a new complaint for administrative review unless the circuit court expressly retained jurisdiction over the matter.

■ We find *Creamer* distinguishable in that the *Creamer* court remanded the matter for a trial *de novo*. Although remand by the trial court for fact finding *de novo* may divest the court of all jurisdiction, remand for limited fact finding does not necessarily divest the court of jurisdiction. (*Department of Transportation v. Grawe* (1983), 113 Ill. App. 3d 336, 447 N.E.2d 467; *Mitrenga v. Martin* (1982), 110 Ill. App. 3d 1006, 443 N.E.2d 268.) The circuit court remanded the case to the Regional Board for the limited purpose of determining the best interests of the children. The court expressed its intent to retain jurisdiction by stating that it would rule further on the matter after July 30, 1993. In the August 4, 1993, hearing, the court announced that it had not intended a *de novo* proceeding, that it had retained jurisdiction, and that no further pleadings or arguments were needed.

Section 3—104 of the Illinois Administrative Review Law (735 ILCS 5/3—104 (West 1992)) states, in part: "The court first acquiring jurisdiction of any action to review a final administrative decision shall have and retain jurisdiction of the action until final disposition thereof."

Appellants further argue that the circuit court improperly considered the complaint for administrative review because appellees had failed to exhaust their administrative remedies by not requesting a rehearing before the Regional Board. Appellants cite *Castaneda v. Illinois Human Rights Comm'n* (1989), 132 Ill. 2d 304, 547 N.E.2d 437, for the proposition that the issue is jurisdictional and thus may be raised for the first time on appeal. We disagree.

*Castaneda* is limited to the issue of whether petitioners seeking administrative review of decisions made by three-member panels of the board must first seek an *en bloc* hearing, which would add six additional members to the panel. *Castaneda* has been held not to be binding if the decision from which judicial review is sought was made by the whole board. *Grigoleit Co. v. Pollution Control Board* (1993), 245 Ill. App. 3d 337, 613 N.E.2d 371.

■ In this case, the Regional Board consisted of seven members, and four positive votes are required for a decision. Six of the seven board members participated in the hearing and five voted to deny the

petition. In order for the appellants to succeed on rehearing, the absent member would have to vote in favor of the petition and at least two of the opposing members would have to change their votes. We do not believe *Castaneda* controls the specific facts of this case. " 'It seems illogical to require a party to address the same arguments to the same judge on the identical questions before proceeding to review by an appellate tribunal.' " See *Keen v. Davis* (1967), 38 Ill. 2d 280, 282, 230 N.E.2d 859, quoting *Larson v. Harris* (1966), 77 Ill. App. 2d 430, 434, 222 N.E.2d 566.

Finally, appellants argue that the trial court erred in reversing the Regional Board's decision since it was not against the manifest weight of the evidence. The Regional Board denied the appellees' petition for detachment and annexation, and appellees sought administrative review in the circuit court. The court found that the decision of the Regional Board was against the manifest weight of the evidence and granted the petition. This court must now determine whether the decision of the circuit court was against the manifest weight of the evidence. See, *e.g.*, *Board of Education of Carrier Mills-Stonefort Community Unit School District No. 2 v. Regional Board of School Trustees* (1987), 160 Ill. App. 3d 59, 513 N.E.2d 41.

■ We believe that the evidence indicates that the educational opportunities and facilities of the two school districts are comparable. Appellees' homes are located closer to the Bartelso school than to the closest elementary school in Carlyle, and the Central High School would be only one or two miles farther away than Carlyle High School. We note that it has previously been held that it is proper to give greater weight to the distance issue concerning younger children even if the proposed action increases the distance traveled by older children. (*Board of Education of Community High School District No. 94 v. Regional Board of School Trustees* (1992), 242 Ill. App. 3d 229, 613 N.E.2d 754.) Furthermore, the bus ride to Carlyle averaged 45 to 60 minutes, while the bus ride to Bartelso took approximately 15 minutes. Obvious benefits would result from the shorter distance traveled, including advantages in time, safety, effort, and expense. *Board of Education of Jonesboro Community Consolidated School District No. 43 v. Regional Board of School Trustees* (1980), 86 Ill. App. 3d 230, 407 N.E.2d 1084.

Also, the parties stipulated that the proposed detachment and annexation would have no effect on the ability of either district to meet State educational standards. The record also reflects that there would be no appreciable difference in the operation of the school districts. The proposed detachment and annexation would result in a loss of .29% of the assessed value from Carlyle and a gain of 2.4% in

assessed valuation for Bartelso. The change would also result in approximately $24,000 cut from Carlyle's State aid, which is only about .48% of the district's $5 million annual budget. We find this effect to be *de minimis* in nature. See *Board of Education of Pearl City Community Unit School District No. 200 v. Regional Board of School Trustees* (1981), 98 Ill. App. 3d 599, 424 N.E.2d 808.

Furthermore, the record indicates that all of the affected parents testified that they believed it to be in their children's best interests to attend Bartelso schools. Many of the appellees have close familial and social ties with Bartelso. Several of the affected children attend daycare programs in Bartelso, and many of the parents work in or pass through Bartelso, factors which make that school system more convenient to them. Appellees identify themselves with Bartelso, rather than Carlyle. These factors play an important role in determining the best interests of the children, as previously illustrated:

"[A]n identification with a school district in a child's natural community center will inevitably result in increased participation in school activities by the child and his parents. Such increased participation cannot but result in an improvement in the educational picture of the entire area. By the same token, an unnatural identification with a school district would have an opposite result with a corresponding loss of participation and resulting poorer educational picture. In recognition of these facts the legislature made provision for proceedings to change the boundaries of existing districts." *Burnidge v. County Board of School Trustees* (1960), 25 Ill. App. 2d 503, 510, 167 N.E.2d 21.

Thus, there was evidence from which the court could reasonably conclude that there were potential advantages to both the pupils and their parents in the affected territory. Since there is little financial impact to be feared to the detaching school district and some gain to be achieved in the educational welfare of the pupils, we believe the trial court was correct in finding the Board's order to be against the manifest weight of the evidence. We, therefore, affirm the judgment of the trial court granting the petition for detachment and annexation.

Affirmed.

WELCH and MAAG, JJ., concur.