GREG AMBROSE *et al.*, Plaintiffs-Appellees, v. THORNTON TOWNSHIP SCHOOL TRUSTEES *et al.*, Defendants-Appellants.

First District (4th Division)    No. 1—94—3037

Opinion filed August 10, 1995.

Michael J. Marovich and Timothy C. Lapp, both of Buikema, Hiskes, Dillner, O'Donnell & Marovich, Ltd., of South Holland, for appellant Thornton Township High School District No. 205.

Stanley T. Kusper and David A. DeYoung, both of Kusper & Raucci, Chartered, of Chicago, and John R. Russell, of Van Der Aa, Lanting & Paarlberg, Ltd., of South Holland, for appellant Thornton Township School Trustees.

Dean W. Krone and Alan M. Mullins, both of Ancel, Glink, Diamond, Cope & Bush, P.C., of Chicago, for appellees.

JUSTICE THEIS delivered the opinion of the court:

The defendants appeal from the circuit court's order reversing the decision of the joint board of trustees of schools (Joint Board) which denied the plaintiffs' petition to detach certain territory from Thornton Township High School District No. 205 (District 205) and to annex it to Thornton Fractional Township High School District No. 215 (District 215) under section 7—2b of the School Code. (105 ILCS 5/7—2b (West 1992).) The circuit court also entered sanctions, *sua sponte*, against the Thornton Township school trustees (Thornton

Trustees) stating that their motion to dismiss the plaintiffs' complaint was frivolous. (See 134 Ill. 2d R. 137.) The defendants now argue that the decision of the Joint Board was not against the manifest weight of the evidence. Further, the Thornton Trustees maintain that their motion to dismiss was based on an objectively reasonable argument for the extension of existing law and, therefore, the circuit court abused its discretion in imposing sanctions. We affirm the circuit court's finding that the Joint Board's decision was against the manifest weight of the evidence and that the detachment and annexation should have been granted. We also hold that the trial court abused its discretion when it sanctioned the Thornton Trustees.

On June 16, 1993, a petition was filed with the trustees of schools of Township 36, Range No. 14, to detach certain territory (Territory) from District 205 and annex it to District 215 under section 7—2b of the Illinois School Code. (105 ILCS 5/7—2b (West 1992).) Districts 205 and 215 lie within four different townships in Cook County, Illinois: (1) Thornton Township, (2) Thornton Fractional Township, (3) Calumet Township, and (4) Bloom Township. Therefore, pursuant to section 7—04(a), the trustees of schools from each of these townships formed the Joint Board, the body responsible for holding a hearing and rendering a decision on the plaintiffs' petition. 105 ILCS 5/7—04(a) (West 1992).

The Joint Board held an evidentiary hearing on September 16, 1993. The parties agreed that the Territory at issue is located in Lansing, Illinois, and is comprised of all of precinct 166 and a portion of precinct 174. In support of their petition, the plaintiffs submitted documentary evidence including: (1) a certified copy of the voter registration lists for precincts 166 and 174; (2) a list of the equalized assessed value for all the real estate included in the Territory; (3) 67 circulated petition sheets containing 774 signatures; (4) certified copies of maps prepared by the Department of Revenue dated December 1989, showing the boundaries of Districts 205 and 215; (5) a copy of the precinct map for precincts 166 and 174 certified by the county clerk; (6) a tally sheet showing the number of registered voters who signed the petition; (7) a map outlining the detachment Territory and high school districts; and (8) a legal description of the Territory. The plaintiffs rested on their documents as sufficient evidence that they met the requirements of section 7—2b.

The defendants, District 205 and the Thornton Trustees, objected to the plaintiffs' petition on several grounds. The defendants argued that the plaintiffs did not meet the contiguity requirement of section 7—2b. They offered an uncertified map prepared by the Cook County

Department of Highways dated July 1, 1974, which purportedly showed the boundaries of Districts 205 and 215. Dr. Richard Taylor, the superintendent of District 205, testified that the defendants' map was the one used by District 205 in its day-to-day business. According to Dr. Taylor, the defendants' map shows that the easternmost boundary of District 205 is Torrence Avenue. The defendants argue that Dr. Taylor's testimony implies that a portion of District 205 would be surrounded by District 215 if detachment were permitted. Dr. Taylor further testified that the educational service region, the entity from which the defendants obtained the map, refused to certify the map.

Following the hearing, each of the individual school trustees for the four townships issued a written opinion. The trustees for Bloom, Calumet and Thornton Fractional Townships all allowed the petition for detachment and annexation, specifically finding that the petitioners met their burden of proving the requirements of section 7—2b. However, the Thornton Trustees denied the petition, concluding that the plaintiffs failed to meet their burden of proof regarding contiguity and the total number of registered voters who resided within the detaching Territory. The Thornton Trustees also found 95 of the 774 signatures invalid. Consequently, the plaintiffs' petition was denied because the Joint Board did not reach a consensus as required by section 7—04(a) of the School Code. See 105 ILCS 5/7—04(a) (West 1992).

The plaintiffs then filed a complaint for administrative review. The circuit court reversed the Joint Board's decision, concluding that it was against the manifest weight of the evidence. The court found that the plaintiffs presented adequate proof of the total number of signatures, that 50 signatures were improperly invalidated by the Joint Board and that the plaintiffs demonstrated that Districts 205 and 215 were contiguous. The court ordered the detachment and annexation to go forward, entered sanctions against the Thornton Trustees for filing a frivolous motion to dismiss and awarded the plaintiffs costs and attorney fees in the amount of $2,062.50. The defendants, the Thornton Trustees and District 205, now appeal.

The first question presented on review is whether the Joint Board's decision denying the plaintiffs' petition for detachment and annexation was against the manifest weight of the evidence. Specifically, we must determine whether the plaintiffs failed to meet their burden of producing evidence sufficient to permit the detachment and annexation under section 7—2b of the School Code.

■ Section 7—2b of the School Code provides in part:

"Any contiguous portion of an elementary or high school district that constitutes 10% or less of the equalized assessed value of the district shall upon petition of two-thirds of the registered voters of

the territory proposed to be detached and annexed be so detached and annexed by the regional board of school trustees ***. The regional board of school trustees shall have no authority or discretion to hear any evidence or consider any issues except those that may be necessary to determine whether the limitations and conditions of this Section have been met." Pub. Act 87—1270, eff. March 3, 1993 (amending Ill. Rev. Stat. 1991, ch. 122, par. 7—2b, now 105 ILCS 5/7—2b (West 1992)).

The defendants concede that the plaintiffs presented evidence which proved that the detaching area had an equalized assessed valuation of less than 10% of District 205's total valuation. Therefore, the narrow issues before us are: (1) whether the plaintiffs have met their burden of proving that the detaching Territory is contiguous with District 215, (2) whether the plaintiffs met their burden concerning the total number of registered voters in the detaching area, and (3) whether section 7—1 of the School Code applies to petitions filed under section 7—2b and, if so, whether certain addresses on the plaintiffs' petition sheets satisfied the requirements of section 7—1. See 105 ILCS 5/7—1 (West 1992).

In this case, the plaintiffs had the burden of proving that they met the requirements of section 7—2b by a preponderance of the evidence. (See 5 ILCS 100/10—15 (West 1994).) The term "burden of proof" means that the plaintiffs have both the burden of producing evidence, as well as the burden of persuading the trier of fact that certain facts are true. (*Anderson v. Department of Public Property* (1986), 140 Ill. App. 3d 772, 777-78, 489 N.E.2d 12, 15.) The burden of persuasion remains with the plaintiffs throughout the proceedings. The burden of production is satisfied when the plaintiffs present sufficient evidence on each element of the cause of action, thereby establishing a *prima facie* case. (*Anderson*, 140 Ill. App. 3d at 778, 489 N.E.2d at 16.) Once the plaintiffs set forth a *prima facie* case, the burden of production shifts to the defendants to come forward with evidence. See *Anderson*, 140 Ill. App. 3d at 778, 489 N.E.2d at 16.

The defendants maintain that the Joint Board's decision is not against the manifest weight of the evidence because the plaintiffs did not fulfill their burden of proving that the Territory is contiguous with District 215 as required by section 7—2b. The defendants contend that there is a "direct conflict" between the 1974 Cook County Department of Highways map which they presented and the maps offered by the plaintiffs. They argue that because the plaintiffs did not present evidence resolving the conflict between the maps, they did not meet their burden of proving contiguity.

■ Although factual findings by an administrative agency are

held to be *prima facie* true (*Skolek v. Utica Grade School District No. 135* (1992), 232 Ill. App. 3d 278, 597 N.E.2d 919), a reviewing court may evaluate documentary evidence presented in an administrative proceeding *de novo*. (*Board of Education of Sparta Community Unit School District No. 140 v. Illinois State Board of Education* (1991), 217 Ill. App. 3d 720, 577 N.E.2d 900; *National Boulevard Bank v. Citizens Utilities Co.* (1982), 107 Ill. App. 3d 992, 438 N.E.2d 471.) A reviewing court has a duty to examine the evidence in an impartial manner and to set aside an order which is unsupported in fact. *Carver v. Bond/Fayette/Effingham Regional Board of School Trustees* (1992), 146 Ill. 2d 347, 586 N.E.2d 1273.

■ Upon reviewing the defendants' map *de novo*, we conclude that it is unreliable and does not directly conflict with the plaintiffs' maps. In fact, the map offered by the defendants does not contain a legend to enable this court to discern the meaning of the various lines running through it. Likewise, we conclude that the testimony of Dr. Taylor does not raise a question about the easternmost boundary of District 205. Dr. Taylor testified in reliance upon a 20-year-old map which we have found to be inherently unreliable and meaningless. Therefore, we find that the defendants did not present evidence which directly conflicts with the evidence offered by the plaintiffs. Thus, the plaintiffs' maps must be viewed in the light most favorable to them. See *Anderson*, 140 Ill. App. 3d at 778, 489 N.E.2d at 16.

In their brief, the Thornton Trustees concede that the maps offered by the plaintiffs (where legible) "show the eastern boundary of the area to be detached and the western boundary [of] District 215 as Locust Street in Lansing, Illinois." Further, the parties agree that the detaching Territory is next to District 215 because they share a common border known as the Grand Trunk Railroad. As such, we find that the plaintiffs have presented evidence sufficient to allow us to conclude that the contiguity requirement has been met, and the defendants have not offered any competent evidence to the contrary. Consequently, we hold that the decision of the Thornton Trustees concerning the contiguity requirement was against the manifest weight of the evidence.

We now turn to the matter of whether the plaintiffs produced sufficient evidence on the total number of registered voters in the detaching territory. The parties agree that the Territory consists of a portion of precinct 174 and all of precinct 166. The defendants argue that the plaintiffs failed to show the total number of voters because they did not identify the registered voters in precinct 174 who resided within the Territory. The defendants do not dispute that the certified voter registration lists for precincts 166 and 174 offered by the plaintiffs were valid and accurate.

Section 7—1 of the School Code provides in pertinent part:
"Registered voters shall be determined by the official voter registration lists as of the date the petition is filed." (105 ILCS 5/7—1 (West 1992).)

At the hearing before the Joint Board, the plaintiffs maintained that there are 1,071 voters residing within the Territory. The defendants contend that the plaintiffs failed to meet their burden of production because they did not provide detailed evidence explaining the manner in which they arrived at the 1,071 figure. The defendants argue that the plaintiffs attempted to escape their burden of proof by forcing the defendants or the Joint Board to determine which voters in precinct 174 are within the Territory. However, the defendants concede that the lists would enable one to determine which voters are in the affected territory and which are not.

The defendants contend that as in *Seelhoefer v. Regional Board of School Trustees* (1994), 266 Ill. App. 3d 516, 640 N.E.2d 360, the plaintiffs here should have presented a certificate from the county clerk to attest to the total number of registered voters in precinct 174 who would be affected by the detachment and annexation. They further suggest that the plaintiffs could have called the county clerk to testify concerning the number of registered voters. (See *Augustine v. Regional Board of School Trustees* (1993), 253 Ill. App. 3d 827, 625 N.E.2d 1154; *Shapiro v. Regional Board of School Trustees* (1983), 116 Ill. App. 3d 397, 451 N.E.2d 1282; *Andrews v. County of Madison* (1977), 54 Ill. App. 3d 343, 369 N.E.2d 532.) Although it would have been permissible for the plaintiffs to have provided testimony or a certificate from the county clerk, the cases cited do not hold that the plaintiffs would be unable to meet their burden of proof under section 7—2b in the absence of such evidence.

■ We have reviewed the documentary evidence presented in order to determine whether the plaintiffs have established a *prima facie* case for detachment and annexation. The evidence includes valid and accurate voter registration lists, a general and legal description of the Territory to be detached and two different maps showing the Territory. The defendants concede that the voter lists enable one to determine the total number of residents within the Territory. As such, we find that the plaintiffs presented evidence sufficient to set forth a *prima facie* case. Therefore, the burden of production shifted to the defendants to show that the Territory did not contain 1,071 voters.

At the hearing, the defendants failed to offer any evidence to rebut the plaintiffs' *prima facie* case. Instead, the defendants simply declared that the plaintiffs had not offered a complete analysis of the

evidence presented. The defendants' bare assertion that the plaintiffs should have interpreted the information is insufficient to refute the plaintiffs' *prima facie* case.

In the absence of evidence to meet a plaintiff's *prima facie* case, a ruling in favor of the plaintiff is warranted as a matter of law. (*Anderson*, 140 Ill. App. 3d at 778, 489 N.E.2d at 16.) We find that the plaintiffs provided sufficient evidence showing the total number of registered voters within the Territory and the defendants failed to refute this evidence. Therefore, we conclude, as a matter of law, that the decision of the Thornton Trustees on the issue of the total number of voters within the Territory was against the manifest weight of the evidence.

■ The final matter concerning the propriety of the Joint Board's decision to deny annexation is whether certain addresses on the signature petition sheets were sufficient under the School Code. The defendants argue that section 7—1 of the School Code applies to the present case. Section 7—1 of the School Code provides, in relevant part:

> "Each page of the circulated petition shall include the full prayer of the petition, and each signature contained therein shall *match* the official signature and address of the registered voters as recorded in the office of the election authority having jurisdiction over the county." (Emphasis added.) 105 ILCS 5/7—1 (West 1992).

The defendants argue that although section 7—2b does not contain a requirement that the petition signers include their addresses, it must be read in conjunction with section 7—1. The defendants further contend that the 40 signatures at issue here are invalid because the addresses listed do not "match" the addresses on the individuals' voter registration cards as required by section 7—1. Specifically, the 40 signatures at issue were invalidated because they stated a street name and address number, but did not designate "avenue," "street," "road" or "place." The defendants claim that section 7—1 of the School Code requires the signed address to be a "perfect match" with the address listed on the voter registration card.

"The fundamental principle of statutory construction is to ascertain and give effect to the intention of the legislature by giving the language of the statute its plain and ordinary meaning." (*Board of Education of Chenoa Community Unit School District No. 9 v. Regional Board of School Trustees* (1994), 266 Ill. App. 3d 461, 465, 640 N.E.2d 668, 671.) Also, "[t]he sections of the School Code are *in pari materia*, and they must be construed with reference to one another in order to give harmonious meaning to the act as a whole." (*Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373, 389, 415

N.E.2d 1034, 1041.) In general, the intent of signature and address requirements is to guarantee that petitions are supported by the required number of voters in a given area. See generally *Greene v. Board of Election Commissioners* (1983), 112 Ill. App. 3d 862, 445 N.E.2d 1337.

The resolution of the address issue hinges on the court's rationale in *Board of Education of Wapella Community Unit School District No. 5 v. Regional Board of School Trustees* (1993), 247 Ill. App. 3d 555, 617 N.E.2d 442. In *Wapella*, the petitioners sought to dissolve a certain school district under section 7—2a of the School Code. (105 ILCS 5/7—2a (West 1992).) The court in *Wapella* held that if the identity of the registered voter can be determined from the address provided, then the address is sufficient for purposes of section 7—2a of the School Code. *Wapella*, 247 Ill. App. 3d at 559, 617 N.E.2d at 445.

Likewise, the 40 signatures at issue here will not be found invalid merely because they do not contain a street or avenue designation. Reading the School Code as a whole, we conclude that the word "match" in section 7—1 means that the identity of the registered voter must be capable of being determined. Here, using the signers' names and addresses listed in the petition sheets and the official voter registration lists, it is possible to determine whether they match. We do not require a "perfect match" as the defendants suggest. Therefore, the decision of the Thornton Trustees invalidating 40 signatures that did not designate street, avenue, road or place was error. The 40 signatures meet the statutory requirements of the School Code. As such, the plaintiffs satisfied their burden of proving that at least two-thirds of the registered voters in the Territory supported the petition for detachment and annexation.

■ Finally, we turn to the question of whether it was proper for the circuit court, *sua sponte*, to award sanctions against the Thornton Trustees under Illinois Supreme Court Rule 137. (See 134 Ill. 2d R. 137.) The Thornton Trustees filed a motion to dismiss the plaintiffs' complaint, arguing that they failed to exhaust their remedies before filing the complaint for administrative review and citing to *Castaneda v. Illinois Human Rights Comm'n* (1989), 132 Ill. 2d 304, 547 N.E.2d 437. In *Castaneda*, the court interpreted language of a statute which provided that a party "may" file for rehearing as mandatory. (*Castaneda*, 132 Ill. 2d at 325, 547 N.E.2d at 447.) The Thornton Trustees reasoned that the School Code also contains a provision which states that within 10 days after service of an order denying a petition for detachment and annexation any party "may" petition for a rehearing. (See 105 ILCS 5/7—6(n) (West 1992).) They argued that

under section 7—6(n) the plaintiffs should have filed a petition for rehearing.

Supreme Court Rule 137 allows the trial court to award sanctions against parties who file frivolous pleadings when a pleading has no basis in fact or law. (134 Ill. 2d R. 137.) An attorney's signature on a pleading, motion or other paper indicates:

> "[T]hat to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose." (134 Ill. 2d R. 137.)

"Rule 137 is intended to prevent counsel from making assertions of fact or law without support ***." (*Lewy v. Koeckritz International, Inc.* (1991), 211 Ill. App. 3d 330, 334, 570 N.E.2d 361, 364.) Specifically, with respect to a question of law, Rule 137 is intended to provide a sanction when a party asserts a proposition of law which is *contrary* to established precedent. *Shea, Rogal & Associates, Ltd. v. Leslie Volkswagen, Inc.* (1993), 250 Ill. App. 3d 149, 621 N.E.2d 77.

In order to avoid sanctions, parties must present objectively reasonable arguments for their view, regardless of whether they are found to be correct. (See *Shea*, 250 Ill. App. 3d at 154, 621 N.E.2d at 80.) In determining whether sanctions are warranted in a particular case, the court must ascertain what was reasonable at the time and should not engage in hindsight. (*Lewy*, 211 Ill. App. 3d at 334, 570 N.E.2d at 365.) A reviewing court will not overturn a circuit court's decision to impose sanctions, unless the court exceeded its discretion. *Lewy*, 211 Ill. App. 3d at 334-35, 570 N.E.2d at 365.

It is true that *Castaneda* may be distinguished from the present case. However, it does not necessarily follow that the defendants' arguments for extending *Castaneda* were in bad faith. There is an equally reasonable argument that *Castaneda* should be applied to the present case given the similarity of the statutory language. Therefore, we conclude that under the law as of the date of the motion to dismiss, it was objectively reasonable for the defendants to argue for the extension of *Castaneda*.

Our finding that the defendants' motion was objectively reasonable is buttressed by the court's decision in *Seelhoefer v. Regional Board of School Trustees* (1994), 266 Ill. App. 3d 516, 640 N.E.2d 360. In *Seelhoefer*, the appellate court expressly limited *Castaneda* in a case involving the School Code. The court in *Seelhoefer* addressed the argument made by the defendant on appeal, citing to case law and supporting its decision with logic. This decision demonstrates that the defendant's position was not so preposterous or frivolous that it

violated Supreme Court Rule 137. Therefore, we conclude that the circuit court exceeded its discretion when it imposed sanctions against the Thornton Trustees, and we reverse the circuit court's decision on this issue.

Affirmed in part; reversed in part.

CAHILL and S. O'BRIEN, JJ., concur.