PONTIAC TOWNSHIP HIGH SCHOOL DISTRICT NO. 90, Plaintiff-Appellant, v. THE REGIONAL BOARD OF SCHOOL TRUSTEES FOR LIVINGSTON COUNTY *et al.*, Defendants-Appellees.

Fourth District    No. 4—88—0586

Opinion filed June 1, 1989.

GREEN. J., dissenting.

Thomas R. Miller, of Miller, Tracy, Braun & Wilson, Ltd., of Monticello, for appellant.

Donald D. Bernardi, State's Attorney, of Pontiac (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellee Regional Board of School Trustees for Livingston County.

Everett E. Nicholas, Jr., and Heidi A. Katz, both of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago, for appellee Board of Education of Dwight Township High School.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff Pontiac Township High School District No. 90 (Pontiac) appeals the circuit court's affirmance of the decision of the Regional Board of School Trustees of Livingston County (Board). On January 4, 1988, the Board granted a petition filed pursuant to section 7—6 of the School Code (Code) (Ill. Rev. Stat. 1985, ch. 122, par. 7—6) and ordered the detachment of 7,354.85 acres from Pontiac for annexation to Dwight Township High School District No. 230 (Dwight). Pontiac contends the granting of the detachment was erroneous because no pupils reside in the detachment area as required by statute. Pontiac also argues that even if the existence of pupils in the detachment area is not required, the decision of the Board is against the manifest weight of the evidence. We agree and reverse.

Two separate petitions pursuant to section 7—6 of the Code were filed with the Board, seeking detachment of a total of 7,354.85 acres from Pontiac for annexation to Dwight. The first petition, filed on June 30, 1987, and referred to as petition No. 82, was signed by the 13 registered voters living on the 2,041.67 acres which were the subject of petition No. 82. No children resided on this property, which has an

assessed valuation of $302,144. The second petition, filed on October 20, 1987, and referred to as petition No. 86, was signed by two-thirds of the registered voters living on the 5,313.18 acres subject to this petition. One school-aged child, a high school senior, resided on this property, which has an assessed valuation of $800,075.

As of July 1, 1987, Pontiac's total assessed valuation was $103,054,753. This figure includes property detached from Odell Community High School District No. 160 (Odell) and annexed to Pontiac on July 1, 1987, and property detached from Saunemin Community Consolidated School District No. 438 (Saunemin) and annexed to Pontiac on July 1, 1987. After the Odell and Saunemin properties were annexed to Pontiac, five petitions, excluding Nos. 82 and 86, were filed before the Board to detach certain territory from Pontiac for annexation to Dwight (four petitions) and Prairie Central Community Unit School District No. 8 (one petition). Pontiac did not oppose these five petitions, which were later granted. The total assessed valuation of the property in the five petitions was $2,673,800. The corresponding loss of tax revenue to Pontiac for these five petitions was $42,638 annually.

The 1987 overall tax rate for Pontiac is 1.696%. Pontiac is levying the maximum rate in all operating funds except the transportation fund. The tax rate for Dwight is 1.9689% and it is levying the maximum authorized rate in all funds. The total potential loss in assessed valuation to Pontiac, including all seven petitions, is $3,776,019 or 3.67% of its total assessed valuation. The corresponding loss in tax revenue to Pontiac is $60,227 annually.

Five of the petitioners who signed the petitions concerned in this appeal testified before the Board. Their testimony can be summarized as follows:

(1) Each lived 4½ to 10 miles distant from Dwight and from 12 to 22 miles distant from Pontiac.

(2) Two petitioners did business in Pontiac; the majority of the petitioners testifying shopped and banked in Dwight; two petitioners banked in Dwight and Odell; two petitioners attended church in Dwight.

(3) One petitioner had two preschool children, one of whom was attending a private school in Odell and he testified that both of his children would attend this school through the eighth grade.

(4) Three petitioners had lived on their property for at least 24 years and had never petitioned to annex their property to another school district.

(5) None had school-age children.

The superintendent for Dwight schools, Larry Copes, also testified before the Board. He stated the Pontiac and Dwight school districts were equal in terms of accreditation and recognition, though the American College Testing (ACT) scores for Dwight students were below State averages and Pontiac's were at or slightly better than State averages. He reported there was only one student in the detachment area at the time of the hearing and she was a senior at Pontiac High School. He stated he supported the detachment because of the financial benefits to Dwight. He also testified regarding the courses Dwight schools offer to benefit the adult population in the attachment area. He stated that the possible future enrollment of pupils in Dwight schools provided an educational advantage for Dwight.

The superintendent for Pontiac, Ronald Yates, testified before the Board in opposition to the petitions. He stated that the lost revenue to Pontiac, if the petitions Nos. 82 and 86 were granted, would be $17,589 annually.

The principal of Pontiac High School testified regarding the extracurricular offerings at Pontiac and student participation in these programs. The assistant principal for Pontiac High School testified regarding the curricula at Pontiac, including special education and vocational courses and the professional qualifications of Pontiac teachers.

After the hearings, the Board unanimously voted on January 4, 1988, to grant the petitions. Among its findings of fact, the Board concluded:

(1) The equalized assessed valuation (valuation) of Pontiac, excluding the previous five petitions, was $100,380,952.

(2) The valuation of Dwight, including the four previous petitions, was $45,251,500.

(3) The valuation of the area in petitions Nos. 82 and 86, totaling $1,102,219, would result in a 1.10% decrease to Pontiac's valuation.

(4) The valuation of the area in petitions Nos. 82 and 86 would result in a 2.44% increase in Dwight's valuation.

(5) There are no students which would be affected by any change in boundaries.

(6) Dwight would gain, in total revenue, an additional $21,701.59 per year if the petitions were granted.

(7) Pontiac would lose $17,589 in revenue per year if the petitions were granted.

(8) The granting of the petitions would have no significant effect on either district's ability to meet statutory standards of

recognition prescribed by the State Board of Education.

(9) Pontiac is not levying the maximum authorized tax rate in all funds, while Dwight is levying the maximum rate in all funds.

(10) The financial detriment to Pontiac from detachment is minimal and a financial benefit to Dwight from annexation is minimal.

(11) The benefit to Dwight outweighs the detriment to Pontiac and the surrounding community as a whole.

On January 20, 1988, Pontiac filed a complaint for administrative review in the circuit court for Livingston County. On July 14, 1988, the circuit court dismissed Pontiac's complaint, finding the Board's decision was supported by the evidence.

Pontiac urges that because section 7—6 of the Code mandates that "the educational welfare of the pupils" be considered by the Board, there must first be students residing in the detachment area. Since there were no students in the detachment area, the petitions should have been denied. Pontiac contends the Board's decision is contrary to the requirements of section 7—6 because there was no evidence before the Board regarding the educational welfare of the students in the detachment area.

Dwight argues that the Board's decision is supported by the evidence and conforms to the accepted standards governing these petitions under section 7—6.

Section 7—6 of the School Code (Ill. Rev. Stat. 1985, ch. 122, par. 7—6) governs petitions for detachment. Section 7—6 provides that the regional board of school trustees to whom the petition is presented shall:

> "[H]ear evidence as to the school needs and conditions of the territory in the area within and adjacent thereto and as to the ability of the districts affected to meet the standards of recognition as prescribed by the State Board of Education, and shall take into consideration the division of funds and assets which will result from the change of boundaries and shall determine whether it is to the best interests of the schools of the area and the educational welfare of the pupils that such change in boundaries be granted." Ill. Rev. Stat. 1985, ch. 122, par. 7—6.

The supreme court in *Oakdale Community Consolidated School District No. 1 v. County Board of School Trustees* (1957), 12 Ill. 2d 190, 194, 145 N.E.2d 736, 738, stated that section 4B—4 (Ill. Rev. Stat. 1953, ch. 122, par. 4B—4), predecessor to section 7—6, authorizes the Board to grant a petition:

"[O]nly if the division of funds and assets will not jeopardize the educational resources of existing districts and if the change will serve the best interests of the pupils in the entire area. School districts are not to be changed, therefore, solely by the shopping, banking or school preferences of those residing in particular segments thereof."

The *Oakdale* court also stated:

"The welfare of the affected districts and their pupils as a whole must control rather than the wishes of a few, and such petitions [*sic*] granted only where the benefit derived by the annexing and affected areas clearly outweighs the detriment resulting to the losing district and the surrounding community as a whole." *Oakdale*, 12 Ill. 2d at 193-94, 145 N.E.2d at 737.

In *Board of Education of Golf School District No. 67 v. Regional Board of School Trustees* (1982), 89 Ill. 2d 392, 433 N.E.2d 240, the supreme court again discussed the statutory considerations under section 7—6. In *Golf*, the supreme court embraced the "whole child" and "community of interest" factors utilized by the Board in *Golf* when it ascertained whether the benefit to the annexing and affected areas clearly outweighed the detriment to the losing district and the surrounding community as a whole.

■ The "whole child" concept recognizes that extracurricular participation in social, religious, and even commercial activities is important in a child's development as a beneficial supplement to the child's academic involvement. (*Golf*, 89 Ill. 2d at 397, 433 N.E.2d at 243.) The "community of interest" notion takes into consideration whether the petitioning area is identified with the school district and community to which annexation is requested. (*Golf*, 89 Ill. 2d at 397-98, 433 N.E.2d at 243.) The "community of interest" factor figures importantly with the "whole child" concept in determining the benefits and detriments to the school districts involved in a section 7—6 detachment petition.

Pontiac raises a threshold issue which has been previously addressed by the appellate court: Whether the existence of pupils in the detachment area is a prerequisite to consideration of a section 7—6 petition.

Pontiac relies on *Board of Education of Springfield School District No. 186 v. Scott* (1969), 105 Ill. App. 2d 192, 244 N.E.2d 821. In *Scott*, parcels of land in other school districts were annexed to a special charter district pursuant to section 7—2.1 of the School Code, which has since been repealed. (Ill. Rev. Stat. 1965, ch. 122, par. 7—2.1.) The school district in which the parcels were located prior to the annexation appealed, contending the decision was not in the best inter-

ests of the schools of the area and the educational welfare of the pupils therein. There were no students residing in the territory annexed. The *Scott* court held the annexation was erroneous and stated:

"On this record, we are of the opinion that the evidence is not sufficient to support the order *** [t]here being no pupils in the annexed territory, no testimony possibly could be produced, nor was any produced, to meet the consideration and test of the educational welfare of the pupils.

*** Each annexation or detachment must be examined in the light of the facts then existing, and for that purpose we believe it impermissible to speculate as to the effect of future and wholly contingent annexations or detachments." *Scott*, 105 Ill. App. 2d at 201, 244 N.E.2d at 825-26.

Dwight contends that Pontiac's position—"no children, no detachment"—should be rejected because under section 7—6 "educational welfare of pupils" includes the welfare of students who attend school in the respective districts but do not live in the detachment area. Dwight points out that all students in Dwight would benefit if the detachment order were affirmed because the district is "financially pinched." Dwight further states that the Board has a duty to consider whether the detachment would foster the educational welfare of future students and cites to *City National Bank v. Schott* (1983), 113 Ill. App. 3d 388, 447 N.E.2d 478, and *Rhinehart v. Board of Education of Bloomington School District No. 87* (1971), 132 Ill. App. 2d 1078, 271 N.E.2d 104, in support of this argument.

In both *Schott* and *Rhinehart*, a petition for disconnection was filed pursuant to section 7—2.6 of the School Code (see Ill. Rev. Stat. 1987, ch. 122, par. 7—2.6), which concerns special charter districts. In both cases, the appellate court found the petitions should be granted, despite the absence of school-age children, because the evidence before the Board in these cases did address the educational welfare of future children whose presence in the area was immediately foreseeable. The court in *Rhinehart* also stated:

"Nothing suggests a statutory intent that the single fact that there were no pupils in a territory would preclude a showing of the benefits and detriments *to an immediately potential student population.*" (Emphasis added.) *Rhinehart*, 132 Ill. App. 2d at 1083, 271 N.E.2d at 108.

The Board cites three other cases upholding detachment where no children were present in the area. In *Granfield v. Regional Board of School Trustees* (1982), 108 Ill. App. 3d 703, 439 N.E.2d 497, *Zejmowicz v. County Board of School Trustees* (1971), 133 Ill. App. 2d 735,

272 N.E.2d 783, and *Board of Education, Troy Consolidated School District No. 30 C v. Will County Board of School Trustees* (1971), 132 Ill. App. 2d 947, 271 N.E.2d 87, the courts found detachment was proper.

In *Granfield* and *Zejmowicz*, there was evidence before the Board concerning the educational programs of the school districts involved as well as evidence of the identification of the detachment area with the annexing district. Thus, detachment was proper. The *Troy* case did not involve an issue concerning educational welfare of students and, thus, that case provides no authority for Dwight's or the Board's position.

■■■ After reviewing the cases cited by the parties, we conclude that the mere lack of pupils in a detachment area is not fatal to a petition pursuant to section 7—6. In those cases where no children were residing in the detachment areas, some evidence was presented to the Board so that it could determine the educational welfare of present or immediately foreseeable pupils. Therefore, the detachment was proper. While we find the existence of pupils in the area is not required under the statute, in the case before us, the Board received no evidence regarding the educational welfare of pupils. For this reason, we must reverse the order of the Board.

■ We recognize the Board is the fact finder in those cases brought pursuant to section 7—6 and its determinations and decisions will not be set aside on administrative review unless they are shown to be contrary to the manifest weight of the evidence. (*Golf*, 89 Ill. 2d at 396, 433 N.E.2d at 242.) As stated by the supreme court in *School Directors of School District No. 82 v. Wolever* (1962), 26 Ill. 2d 264, 268, 186 N.E.2d 281, 283:

> "When the entire record indicates *** that the board has considered the applicable statutory standards and is supported in its conclusion by substantial evidence, its determination must be affirmed."

Pontiac urges the Board's decision of January 4, 1988, to grant the petitions was primarily based on finding No. 16:

> "That the detachment area residents strongly identify with the Village of Dwight, Livingston County, Illinois, and Dwight Township High School District No. 203, *** and that the residents favor detachment because of physical proximity which causes them to naturally identify with and gravitate to the Dwight community, notwithstanding the fact that there will be an increased tax rate."

Pontiac argues that this finding evidences a consideration of the "community of interests" factor as set forth in *Golf* but ignores the "whole

child" factor, which is so closely intertwined. Pontiac cites to two recent cases, *Fixmer v. Regional Board of School Trustees* (1986), 146 Ill. App. 3d 660, 497 N.E.2d 152, and *Dresner v. Regional Board of School Trustees* (1986), 150 Ill. App. 3d 765, 501 N.E.2d 983, where the court affirmed the Board's denial of a detachment petition because there was no evidence regarding the educational welfare of students.

We find *Fixmer* and *Dresner* persuasive authority for the case before us. In *Fixmer*, the evidence of educational welfare was found to be conflicting at best, and in *Dresner*, there was virtually no evidence regarding the welfare of the children but only evidence of the desires of the adults involved. In affirming the Board's denial of the petition, the *Dresner* court stated:

> "Although the wishes or conveniences of petitioning parents and their children are to be considered, more than the personal preference of petitioners must be shown to warrant a change in district boundaries." *Dresner*, 150 Ill. App. 3d at 779, 501 N.E.2d at 993, citing *Golf*, 89 Ill. 2d at 400, 433 N.E.2d at 244.

In the case before us, we conclude that the entire evidence before the Board concerned the "community of interests" of the petitioners, who have no school-age children. One petitioner, Earl Blair, testified he lives closer to Dwight and spends most of his time there. He stated that he hoped one day his grandchildren will live near him and if so, it would be closer for them to go to Dwight schools. Another petitioner, Earl Hoegger, also testified he lives closer to Dwight and shops and banks in Dwight. Similar testimony was received from petitioners Howard Verdun, Jerry Legner, and Mrs. Theodore Hubert.

The Board contends that it could have reasonably considered the interests of the two preschool children residing in the area were better served if they could eventually go to a high school closer to their home and participate in extracurricular activities. While the Board may be correct, the fact remains that the Board's own findings establish that it did *not* consider these two preschoolers. Significantly, one of the Board's findings was that *no* children would be affected by the change in boundaries.

Dwight argues that the annexation to Dwight promotes the safety of future pupils and points to the two findings of the circuit court on review:

> "In predominantly rural counties such as Livingston County, transportation to and from schools, particularly in times of inclement weather is a significant factor to be considered by the Regional Board. Although there are presently no children attending either the Pontiac or Dwight High Schools from the ter-

ritory in question, at such time as such school attendance would occur, the distance factor gains considerable significance. It appears that children with the longest bus rides in question would be travelling a distance of approximately 17 miles round trip to Dwight High School as opposed to 44 miles round trip to Pontiac High School.

The increased safety and savings in transportation costs and time together with the identification of the affected area with the Village of Dwight as opposed to the City of Pontiac could well result in increased participation in school activities by the child and his parents depending upon which school district they are thrust into."

This argument is not supported by the record. There was no evidence before the Board regarding safety concerns or increased participation in school activities if the detachment was granted. Indeed, the Board made no such finding.

Dwight also states that "all of the available evidence indicates that future students will gravitate naturally to the annexing district." There is no evidence in the record that this was established before the Board.

In summary, a careful review of the record indicates that the Board did not have *any* evidence before it regarding the educational welfare of the children of the area. This is required by the statute.

Pontiac next argues that the Board's finding that the financial impact on Pontiac was minimal is erroneous. Because we conclude the Board did not consider the statutory factors in granting the petitions, and that its order granting the petitions was erroneous, we need not address this issue.

For the foregoing reasons, we conclude the decision of the Board was erroneous. Accordingly, the orders of the circuit court and the Regional Board of School Trustees for Livingston County allowing the detachment are reversed.

Reversed.

LUND, J., concurs.

JUSTICE GREEN, dissenting:
The thrust of the testimony in support of the petition was that (1) the detachment area was much farther from Pontiac than from Dwight; (2) persons residing in the area tended to shop or bank in Dwight rather than in Pontiac; and (3) the petitioners felt strongly

enough about detachment from one district and annexation to another that they were willing to be subjected to a higher real-property tax rate to obtain the change. Where, as here, other factors are neutral in regard to change, common sense would seem to permit the Board, acting within its discretion, to authorize such a change. However, the lack of pupils residing in the area involved is a special factor which must be given special consideration.

The majority properly recognizes the deference to be given to the administrative decision of the Board and that the "mere lack of pupils in the detachment area is not fatal to a petition" of the nature here. The case of *City National Bank v. Schott* (1983), 113 Ill. App. 3d 388, 447 N.E.2d 478, is the most recent of the cases holding that lack of pupils in the area involved is not determinative. There, in holding a regional board of school trustees erred in denying detachment of an area without pupils, the court held that in determining the effect of boundary changes on educational welfare of pupils, the "whole child" and "community of interest" factors pronounced in *Board of Education of Golf School District No. 67 v. Regional Board of School Trustees* (1982), 89 Ill. 2d 392, 433 N.E.2d 240, should be given substantial consideration. *Schott*, 113 Ill. App. 3d at 394, 447 N.E.2d at 482.

This case is unlike *Fixmer v. Regional Board of School Trustees* (1986), 146 Ill. App. 3d 660, 497 N.E.2d 152, and *Dresner v. Regional Board of School Trustees* (1986), 150 Ill. App. 3d 765, 501 N.E.2d 983. There, the reviewing courts upheld decisions of boards of school trustees denying change when no evidence was presented regarding educational advantages which would result from change of boundaries. Here, the majority overturns a decision of school trustees in the face of some substantial evidence of educational advantage. The Board found a "community of interest" to exist in regard to Dwight. This was shown not only by the shopping and banking habits of residents of the detachment area but also by the testimony of much greater traveling distance to Pontiac than to Dwight from various domiciles in the area. One petitioner stated that the respective distances were 5 and 19 miles. Another said 6 and 12, while a third testified to 4½ and 17 miles.

The *Golf* court considered the "community of interest" factor and that of the "whole child" to be closely related. The latter factor includes the concept that a student's participation in extracurricular activities is a significant part of the student's education. That court stated a pupil is much more likely to participate in extracurricular activities if the pupil identifies with the place in which the school is located. The court deemed this aspect to be even more significant than the safety or convenience aspect of attending a school nearer the place of residence.

The majority correctly points out that no direct evidence was presented indicating traveling to school in Dwight would be safer than traveling to Pontiac. Such evidence is seldom available in cases of this nature unless traveling in one direction involves the crossing of a hazardous bridge or railroad. However, the disparities in distance to be traveled is some circumstantial evidence of greater safety as traveling shorter distances generally creates less exposure to collision than traveling longer distances. Moreover, the necessity to travel the longer distances involves a greater inconvenience. Most extracurricular activities take place after school and no bus service is available to take the pupils home. Thus, many times, a parent is required to make a round-trip automobile drive to provide that transportation. The longer that trip the more likely that parent is to prohibit or discourage that pupil's participation in after-school activities.

While, if the Board had denied detachment, I would have difficulty in overturning that ruling, I deem the evidence here sufficient to support the Board's ruling allowing detachment and annexation. It is difficult to imagine a set of circumstances stronger than that here supporting detachment when no substantial difference in the quality of classes offered at the two schools is shown and the area involved is not very close to the base community of either district. Denial of detachment should not be required under such circumstances. The majority is properly concerned because the Board made no specific finding in regard to the "whole child" factor. Under the circumstances, I would not reverse merely for that reason.

Where the findings of an administrative agency are insufficient, a reviewing court may remand the cause to the agency for findings. (*Reinhardt v. Board of Education of Alton Community Unit School District No. 11* (1975), 61 Ill. 2d 101, 329 N.E.2d 218.) Here, unlike in *Reinhardt*, the administrative agency did make some extended findings, including that in regard to the "community of interest" factor, but I do not interpret the lack of findings as to the "whole child" factor to be a rejection of that factor as bearing on this case. The "whole child" factor is closely related to the "community of interest" factor but is a more expanded concept. Under all the circumstances here, I would remand to the Board for findings in that respect.

Accordingly, I dissent from the decision of the majority to reverse. I would merely remand to the Board with directions (1) to consider, without further evidence, the issue of the "whole child" concept; (2) to make findings in regard to its application here; and (3) to certify those findings to this court. We should then consider the matter in light of those findings.