# ILLINOIS OFFICIAL REPORTS

## Appellate Court

**Board of Education of Marquardt School District No. 15 v.**
**Regional Board of School Trustees, 2012 IL App (2d) 110360**

| | |
|---|---|
| Appellate Court Caption | THE BOARD OF EDUCATION OF MARQUARDT SCHOOL DISTRICT NO. 15, Du Page County, Illinois, Plaintiff-Appellant, v. THE REGIONAL BOARD OF SCHOOL TRUSTEES OF Du PAGE COUNTY, ILLINOIS; DARLENE J. RUSCITTI, Regional Superintendent of Schools and *ex officio* Secretary of the Regional Board of School Trustees of Du Page County, Illinois, MARTHA ROGERS, President, GLORIA K. SCIGOUSKY, Trustee, LAURA POLLASTRINI, Trustee, JAMES SHEHEE, Trustee, TIMOTHY WHELAN, Trustee, JOSEPH WOZNIAK, Trustee, GENE CAMPBELL, Trustee; THE BOARD OF EDUCATION OF GLENBARD TOWNSHIP HIGH SCHOOL DISTRICT NO. 87, Du Page County, Illinois; THE BOARD OF EDUCATION OF BLOOMINGDALE SCHOOL DISTRICT NO. 13, Du Page County, Illinois; THE BOARD OF EDUCATION OF LAKE PARK HIGH SCHOOL DISTRICT NO. 108, Du Page County, Illinois; THE COMMITTEE OF TEN FOR THE PETITION TO DETACH TERRITORY FROM MARQUARDT SCHOOL DISTRICT NO. 15 AND GLENBARD TOWNSHIP HIGH SCHOOL DISTRICT 87 AND ANNEX THE SAME TO BLOOMINGDALE SCHOOL DISTRICT 13 AND LAKE PARK HIGH SCHOOL DISTRICT 108, ALL IN Du PAGE COUNTY, ILLINOIS, CONSISTING OF PETITIONERS ROBERT CANICK, VINCENT E. SAVIANO, TANYA SURDO, SHIRLEY TAYLOR, QAMARUDDIN KHAN, SABERA KHAN, FRAN POSITANO, TEODORA CANICK, IQBAL PAGANY, and ARTHUR SWANN; and CHRISTOPHER KOCH, State Superintendent of Education for the Illinois State Board of Education, Defendants-Appellees.–THE BOARD OF EDUCATION OF GLENBARD TOWNSHIP HIGH SCHOOL DISTRICT NO. 87, Du Page County, |

Illinois, Plaintiff-Appellant, v. THE REGIONAL BOARD OF SCHOOL TRUSTEES OF Du PAGE COUNTY, ILLINOIS; DARLENE RUSCITTI, Superintendent and *ex officio* Member of the Regional Board of School Trustees of Du Page County, Illinois, MARTHA ROGERS, President, GENE CAMPBELL, Member, GLORIA K. SCIGOUSKY, Member, LAURA POLLASTRINI, Member, JAMES SHEHEE, Member, TIMOTHY WHELAN, Member, JOSEPH WOZNIAK, Member; THE COMMITTEE OF TEN FOR THE PETITION TO DETACH TERRITORY FROM MARQUARDT SCHOOL DISTRICT 15 AND GLENBARD TOWNSHIP HIGH SCHOOL DISTRICT 87 AND ANNEX THE SAME TO BLOOMINGDALE SCHOOL DISTRICT 13 AND LAKE PARK HIGH SCHOOL DISTRICT 108, ALL IN Du PAGE COUNTY, ILLINOIS: ROBERT CANICK, VINCENT E. SAVIANO, TANYA SURDO, SHIRLEY TAYLOR, QAMARUDDIN KHAN, SABERA KHAN, FRAN POSITANO, TEODORA CANICK, IQBAL PAGANY, ARTHUR SWANN; CHRISTOPHER A. KOCH, State Superintendent of Education for the Illinois State Board of Education; THE BOARDS OF EDUCATION OF MARQUARDT SCHOOL DISTRICT 15, BLOOMINGDALE SCHOOL DISTRICT 13, and LAKE PARK HIGH SCHOOL DISTRICT 108, All in Du Page County, Illinois, Defendants-Appellees.

| | |
|---|---|
| District & No. | Second District<br>Docket Nos. 2-11-0360, 2-11-0391 cons. |
| Filed | April 24, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a petition to detach two subdivisions from their existing school districts and annex them to different school districts, the trial court properly denied the request of the districts from which detachment was sought for a declaratory judgment that the Regional Board lost jurisdiction when those districts submitted the petition to the State Board of Education after the Regional Board of School Trustees failed to render a decision within nine months of filing, since such relief was only available to the petitioners; however, the trial court's decision affirming the Regional Board's subsequent grant of the petition was reversed where the evidence was insufficient to warrant a change in the districts' boundaries. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Du Page County, Nos. 09-MR-1499, 09-MR-1515; the Hon. Bonnie M. Wheaton, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part. |
| Counsel on Appeal | Thomas J. Canna, of Canna & Canna, Ltd., of Orland Park, for appellant Board of Education of Marquardt School District No. 15. |
| | Respicio F. Vazquez, Brian P. Crowley, and Scott R. Metcalf, all of Franczek Radelet, P.C., for appellant Board of Education of Glenbard Township High School District No. 87. |
| | Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman, Assistant State's Attorney, of counsel), for appellees Regional Board of School Trustees of Du Page County and Darlene J. Ruscitti. |
| | Christopher J. Stull, of Law Office of Christopher J. Stull, P.C., of West Chicago, for appellee Committee of Ten. |
| Panel | JUSTICE BURKE delivered the judgment of the court, with opinion. Justices Bowman and Schostok concurred in the judgment and opinion. |

## OPINION

¶ 1    On October 3, 2008, Robert Canick, Vincent E. Saviano, Tanya Surdo, Shirley Taylor, Qamaruddin Khan, Sabera Khan, Fran Positano, Teodora Canick, Iqbal Pagany, and Arthur Swann, as a committee of 10 representing two subdivisions (collectively, petitioners), sought to detach their territory from the boundaries of Marquardt School District 15 (District 15) and Glenbard Township High School District No. 87 (District 87) and to annex the territory into the boundaries of Bloomingdale School District No. 13 (District 13) and Lake Park High School District No. 108 (District 108). Pursuant to the Illinois School Code (School Code) (105 ILCS 5/1-1 to 34A-608 (West 2008)), petitioners filed a petition with the Regional Board of School Trustees of Du Page County (the Board). When the Board had not rendered a decision within nine months of the filing of the petition, Districts 15 and 87 submitted the petition to Christopher A. Koch, the Illinois State Superintendent of Education (State

-3-

Superintendent), alleging that the Board lost its jurisdiction over the petition in accordance with section 7-6(*l*) of the School Code (105 ILCS 5/7-6(*l*) (West 2008)). Counsel for the State Board of Education advised the Board that the relevant School Code provisions applied only to petitioners, not Districts 15 and 87, as Districts 15 and 87 did not submit the petition. The Board then continued its proceedings and subsequently granted the petition.

¶ 2        Districts 15 and 87 filed separate actions for administrative review. District 87's complaint was later amended to add a declaratory judgment claim regarding whether the Board retained jurisdiction to grant the petition. The circuit court of Du Page County denied the request for declaratory judgment and affirmed the Board's decision to grant the petition. Districts 15 and 87 each timely appeal. We consolidated the appeals for review.[1] On appeal, Districts 15 and 87 contend that the Board lost jurisdiction over the petition and, alternatively, that the Board erred in granting the petition. We affirm in part and reverse in part.

¶ 3                                    BACKGROUND

¶ 4        The territory that petitioners sought to detach and annex is located in Du Page County and consists of two small subdivisions, known as the Chateaus of Medinah and Vittoria Brooke Estates (collectively, the territory). The boundary line between the properties served by Districts 15 and 87 and the properties served by Districts 13 and 108 runs through and divides the subdivisions. As set forth in the petition, approximately 25% of the territory is within the boundaries of Districts 13 and 108. The petition sought to detach the remaining 75% of the territory from Districts 15 and 87 and annex the territory into Districts 13 and 108. There are 17 school-aged children, ages 5 though 18, currently residing in the territory, but none attend public schools. At the public hearing held before the Board, the parties submitted stipulated exhibits and a statement of facts. Two petitioners and the superintendents and business managers of both District 87 and District 15 testified at the hearing. No witnesses appeared on behalf of District 13 or 108.

¶ 5        As of July 3, 2009, the Board had neither granted nor denied the petition. On July 16, 2009, Districts 15 and 87 submitted the petition to the State Superintendent, pursuant to section 7-6(*l*) of the School Code (105 ILCS 5/7-6(*l*) (West 2008)). Districts 15 and 87 also provided notice to the Board, as required by section 7-6(*l*). According to Districts 15 and 87, since the petition had been filed, nine months had passed without a decision by the Board and, therefore, once the Board received notice pursuant to section 7-6(*l*), it no longer had jurisdiction over the petition. Based on the relevant School Code provisions, general counsel for the State Board of Education interpreted section 7-6(*l*) to apply only to petitioners, not Districts 15 and 87, as the districts did not bring the petition. The Board then continued its proceedings, requesting that the parties submit legal briefs regarding the petition. On July 24, 2009, Districts 15 and 87 submitted legal briefs opposing the petition and arguing that the Board had no authority to render a decision, because it lacked jurisdiction under the plain language of section 7-6(*l*).

---

[1]We will refer to the Board and petitioners collectively as defendants.

¶ 6     The Board granted the petition on July 29, 2009, and a final administrative decision granting the detachment of the territory from Districts 15 and 87 and the annexation of the territory to Districts 13 and 108 was issued on August 27, 2009. Districts 15 and 87 each filed a complaint seeking administrative review of the decision. The complaints were consolidated for hearing purposes only. District 87 filed an amended complaint on August 4, 2010, that added a claim for declaratory judgment on the issue of the Board's jurisdiction. The trial court denied the claim for declaratory judgment and affirmed the Board's decision. Districts 15 and 87 filed separate timely appeals, which we consolidated for review. Districts 15 and 87 argue on appeal that the trial court erred in denying the claim for declaratory judgment and, alternatively, that the Board's decision is against the manifest weight of the evidence. We will refer to the relevant facts where it is necessary to the analysis of the issues set forth below.

¶ 7                                    ANALYSIS
¶ 8                          Declaratory Judgment Action
¶ 9     Districts 15 and 87 first contend that the trial court erred in denying the claim for declaratory judgment. Districts 15 and 87 maintain that under section 7-6(*l*) of the School Code they were entitled to submit the petition directly to the State Superintendent after nine months without a decision by the Board, and that, when they did so, the Board lost jurisdiction to decide the case.

¶ 10    This is an issue of statutory interpretation, which we review *de novo*. *Board of Education v. Jackson*, 401 Ill. App. 3d 24, 31 (2010). To the extent that a trial court's decision in a declaratory judgment action is not based on factual determinations that are uniquely within its province, the trial court's decision is also subject to *de novo* review. *Pekin Insurance Co. v. Hallmark Homes, L.L.C.*, 392 Ill. App. 3d 589, 593 (2009).

¶ 11    The cardinal principle of statutory interpretation is that the court must effectuate legislative intent. *In re Justin M.B.*, 204 Ill. 2d 120, 123 (2003) (citing *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 83 (1994)). The best indicator of legislative intent is the statutory language. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504 (2000). The court should consider the statute in its entirety, keeping in mind the subject it addresses and the legislature's apparent objective in enacting it. *People v. Taylor*, 221 Ill. 2d 157, 162 (2006) (citing *People v. Davis*, 199 Ill. 2d 130, 135 (2002)). A reviewing court's inquiry, however, must always begin with the language of the statute itself, which is the surest and most reliable indicator of the legislature's intent. *Taylor*, 221 Ill. 2d at 162; *People v. Pullen*, 192 Ill. 2d 36, 42 (2000). When the language of a statute is clear, it must be applied as written without resort to further aids or tools of interpretation. *In re R.L.S.*, 218 Ill. 2d 428, 433 (2006). If statutory language is plain, the court cannot read into the statute exceptions, limitations, or conditions that the legislature did not express. *In re D.D.*, 196 Ill. 2d 405, 419 (2001). Only when the meaning of the statute cannot be ascertained from the language itself may a court look beyond the language and resort to aids for construction. *In re D.D.*, 196 Ill. 2d at 419; *Solich*, 158 Ill. 2d at 81.

¶ 12        Section 7-6(*l*) of the School Code provides, in relevant part:

"Notwithstanding the foregoing provisions of this Section, if within 9 months after a petition is submitted under the provisions of Section 7-1 the petition is not approved or denied by the regional board of school trustees and the order approving or denying that petition entered and a copy thereof served as provided in this Section, *the school boards or registered voters of the districts affected that submitted the petition* (or the committee of 10, or an attorney acting on its behalf, if designated in the petition) may submit a copy of the petition directly to the State Superintendent of Education for approval or denial. *** The school boards, registered voters or committee of 10 submitting the petition and record of proceedings to the State Superintendent of Education shall give written notice by certified mail, return receipt requested to the regional board of school trustees and to the secretary of that board that the petition has been submitted to the State Superintendent of Education for approval or denial, and shall furnish a copy of the notice so given to the State Superintendent of Education. *** *When a petition is submitted to the State Superintendent of Education in accordance with the provisions of this paragraph:*

*(1) The regional board of school trustees loses all jurisdiction over the petition and shall have no further authority to hear, approve, deny or otherwise act with respect to the petition.*

(2) All jurisdiction over the petition and the right and duty to hear, approve, deny or otherwise act with respect to the petition is transferred to and shall be assumed and exercised by the State Superintendent of Education." (Emphases added.) 105 ILCS 5/7-6(*l*)(1), (2) (West 2008).

¶ 13        Defendants maintain that the legislature clearly intended that only the original petitioners may submit their petition to the State Superintendent. Districts 15 and 87 argue that the statutory phrase, "that submitted the petition," modifies only "the registered voters of the districts affected," and not "the school boards," and therefore the statute permits school boards to submit petitions to the State Superintendent. We find defendants' interpretation of the provision to be sound.

¶ 14        The phrase, "that submitted the petition," is not separated from the modified subjects by commas or other clauses. Rather, the statute's unambiguous language provides that the right to remove a petition from the Board to the State Superintendent is reserved solely to either the affected districts' voters that originally brought the petition or the affected districts' school boards that originally brought the petition. The legislature did not intend that just any school board or voter in an affected district may remove the petition to the State Superintendent.

¶ 15        We find support in section 7-1(a) of the School Code, which provides that school district boundaries may be changed by the regional board of school trustees of such region, "or by the State Superintendent of Education as provided in subsection (*l*) of Section 7-6, *when petitioned by the boards of each district affected*." (Emphasis added.) 105 ILCS 5/7-1(a) (West 2008). In section 7-6(*l*), clearly, the words, "of the districts affected," apply to both school boards and registered voters. If section 7-6(*l*) did not apply to those school boards or

registered voters that originally brought the petition, theoretically any school board or voter in the state could remove a petition after the nine-month period.

¶ 16    Because petitioners brought the petition, under the plain meaning of the statute only petitioners could remove the petition to the State Superintendent, and they did not do so. Moreover, because the meaning of the statute can be ascertained from its language, we need not resort to aids for construction, such as the "last antecedent doctrine," legislative history, or public policy considerations, as Districts 15 and 87 propose. The issue of whether the Board lost jurisdiction to resolve the case once Districts 15 and 87 submitted the petition to the State Superintendent need not be addressed either, as it is moot. Finally, although the trial court's denial of the claim for declaratory judgment was based on forfeiture, we can affirm on any basis in the record, regardless of whether the trial court relied on that basis or whether its reasoning was correct. See *Benson v. Stafford*, 407 Ill. App. 3d 902, 912 (2010). Accordingly, we affirm the trial court's denial of the claim for declaratory judgment.

¶ 17                                    Administrative Review Action

¶ 18    We now turn to Districts 15 and 87's alternative contention that the Board erred in granting the petition. We observe that school district boundary changes are governed by article 7 of the School Code (105 ILCS 5/art. 7 (West 2008)). Section 7-6(i) of the School Code provides that, at a hearing on a petition for detachment and annexation, the regional board of school trustees:

"shall hear evidence as to the school needs and conditions of the territory in the area within and adjacent thereto and as to the ability of the districts affected to meet the standards of recognition as prescribed by the State Board of Education, and shall take into consideration the division of funds and assets which will result from the change of boundaries and shall determine whether it is to the best interests of the schools of the area and the educational welfare of the pupils that such change in boundaries be granted." 105 ILCS 5/7-6(i) (West 2008).

¶ 19    The parties seeking annexation and detachment have the burden of proving that "the overall benefit to the annexing district and the detachment area clearly outweighs the resulting detriment to the losing district and the surrounding community as a whole." *Carver v. Bond/Fayette/Effingham Regional Board of School Trustees*, 146 Ill. 2d 347, 356 (1992). The petitioners must prove their case by a preponderance of the evidence. See 5 ILCS 100/10-15 (West 2008). The party bearing the burden of proof retains throughout the proceedings the burden of persuasion as to the facts underlying its claim. *Ambrose v. Thornton Township School Trustees*, 274 Ill. App. 3d 676, 680 (1995). The party also bears initially the burden of production, which it satisfies by presenting sufficient evidence on each element of its cause of action to establish a *prima facie* case. *Ambrose*, 274 Ill. App. 3d at 680. A *prima facie* case is established by evidence that would enable the trier of fact to find each element of the cause of action more probably true than not. *Anderson v. Department of Public Property*, 140 Ill. App. 3d 772, 778 (1986). If the opposing party produces no evidence that contradicts or impeaches this evidence, the trier of fact must rule for the burdened party. *Anderson*, 140 Ill. App. 3d at 778.

¶ 20    The regional board of school trustees' decision on a petition for detachment and annexation is an administrative decision for purposes of the Administrative Review Law (735 ILCS 5/art. III (West 2008)). A reviewing court considers the factual findings of an administrative agency to be *prima facie* true and correct. 735 ILCS 5/3-110 (West 2008). The reversal of an administrative agency's factual finding is warranted only where the finding is against the manifest weight of the evidence: where it is clearly evident that the agency should have reached the opposite conclusion. *City of Freeport v. Illinois State Labor Relations Board*, 135 Ill. 2d 499, 507 (1990); *Pochopien v. Regional Board of School Trustees of the Lake County Educational Service Region*, 322 Ill. App. 3d 185, 193 (2001). For an administrative order that involves mixed questions of fact and law, the proper standard of review is "clearly erroneous." *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). Decisions of an administrative agency on questions of law, such as the interpretation of a statute, are reviewed *de novo. City of Freeport*, 135 Ill. 2d at 507.

¶ 21    In applying the "benefit/detriment test," regional boards and the courts reviewing their decisions should consider the following factors: (1) the differences between school facilities and curricula; (2) the distances from the petitioners' homes to the respective schools; (3) the effect that detachment would have on the ability of either district to meet the state's standards of recognition; (4) the impact the proposed boundary change will have on the tax revenues of both districts; and (5) whether a detaching district will remain financially healthy and able to meet state standards of recognition. *Carver*, 146 Ill. 2d at 356; *Dukett v. Regional Board of School Trustees*, 342 Ill. App. 3d 635, 641 (2003). The "[m]ere absence of substantial detriment to either district *** is not sufficient to support a petition for detachment and annexation." *Carver*, 146 Ill. 2d at 358. However, the petitioners need not demonstrate a particular benefit to the annexing district as long as the overall benefit to the annexing district and the detachment area considered together outweighs the resulting detriment to the losing district and the surrounding community as a whole. *Carver*, 146 Ill. 2d at 358 (citing *Board of Education of Golf School District No. 67 v. Regional Board of School Trustees*, 89 Ill. 2d 392, 400-01 (1982)). In "the absence of substantial detriment to either school district, some benefit to the educational welfare of the students in the detachment area is sufficient to [warrant] the granting of a petition for detachment." *Carver*, 146 Ill. 2d at 358.

¶ 22    The *Carver* court offered some advice regarding the benefit/detriment test and the relevant factors. The loss of revenue is not a determinative factor in detachment proceedings and alone will not prevent a boundary change if the district subject to detachment is not levying at the maximum tax rate. *Carver*, 146 Ill. 2d at 356-57. Although financial loss to the detaching district is not irrelevant, it cannot serve as the basis for a denial of detachment unless it is serious. *Carver*, 146 Ill. 2d at 357.

¶ 23    "Educational welfare" is broadly interpreted. *Carver*, 146 Ill. 2d at 359. Students' educational welfare is bettered not just through improved educational programs or facilities. *Carver*, 146 Ill. 2d at 359-60. Improvement may occur by way of a shortened distance between students' homes and their school. *Carver*, 146 Ill. 2d at 359-60; see *Pochopien*, 322 Ill. App. 3d at 194 (citing examples of educational welfare).

¶ 24    In addition to the factors set forth above, courts may consider the "whole child" and "community of interest" factors. *Carver*, 146 Ill. 2d at 356. These factors examine the

identification of the petitioning territory with the district to which annexation is sought and the corresponding likelihood of participation in school and extracurricular activities. *Carver*, 146 Ill. 2d at 356.

¶ 25　Districts 15 and 87 argue that petitioners failed to meet their burden of proof to establish that detachment or annexation would be in the best interests of the school districts. Districts 15 and 87 assert that the evidence established that granting the petition would create a substantial detriment to Districts 15 and 87 in that it would adversely affect their financial statuses and undermine goals to increase and facilitate diversity.

¶ 26　Districts 15 and 87 argue further that no evidence substantiated that granting the petition would benefit the educational welfare of the students. Districts 15 and 87 note that no public school students reside in the territory and, thus, it is impossible to establish how nonexisting students would benefit from detachment or annexation.

¶ 27　It was undisputed that both Districts 15 and 87 and Districts 13 and 108 offered academic curricula and facilities of comparable quality. District 15 argued that the distances to its schools favored its position, but the longer distances to the elementary and middle schools in District 13 were offset by the shorter distances to the high schools. Districts 15 and 87 argued that they would suffer a financial impact, but the change to the total levies would be minimal. The evidence showed that the loss of tax revenue to the detaching districts would be minimal, as the budget impact would be less than 2%. The evidence showed that the detachment would have no impact on their ability to meet state standards of recognition.

¶ 28　However, the record shows that the average value of the homes in the territory ranges from $724,440 to $881,000. In contrast, the average value of homes in one part of District 15 is $180,000 and in another part is $200,000. The evidence also confirmed that two-thirds of the families living in the territory are Caucasian, while the percentage of African American and Hispanic families is small. The Caucasian population in District 15 is less than 27%, while in District 13 it is more than 75%, with only 8% African American and Hispanic combined. Thus, detaching the territory would have the effect of allowing affluent Caucasian homeowners to change school boundaries so that their children would attend less integrated school districts. Additionally, due to the higher concentration of underprivileged students in District 87, the socioeconomic status of the students from the territory would have a diversifying impact on the schools and students of Districts 15 and 87. Even though achieving diversity is a stated goal of the Board, it never addressed this issue in its order.

¶ 29　Even in the absence of substantial detriment to any of the school districts, the Board's applications of the "whole child" and "community of interest" factors were clearly erroneous. The "whole child" factor recognizes that extracurricular participation in social, religious, and commercial activities is important in a child's development as a beneficial supplement to the child's academic involvement. *Golf*, 89 Ill. 2d at 398. If a child attends school in his or her natural community, it enhances not only his or her educational opportunity but encourages his or her participation in social and other extracurricular activities that figure importantly in the "whole child" idea. *Golf*, 89 Ill. 2d at 397. The "community of interest" factor looks at whether the petitioning area is identified with the school district and the community to which annexation is requested. *Golf*, 89 Ill. 2d at 397-98. This factor figures importantly with

the "whole child" concept in determining the benefits and detriments to the school districts involved in a section 7-6 detachment petition. *Pontiac Township High School District No. 90 v. Regional Board of School Trustees*, 183 Ill. App. 3d 885, 890 (1989). It is also appropriate to consider the personal preferences or conveniences of the petitioning parents and their children; however, more than the petitioners' personal preferences are required for a change in school district boundaries. *Board of Education of St. Charles Community Unit School District No. 303 v. Regional Board of School Trustees of the Kane County Educational Service Region*, 261 Ill. App. 3d 348, 364 (1994).

¶ 30    Petitioners argued that the petition was warranted because removing the boundary divisions in the subdivisions would foster a sense of community. The Board concluded that denying the petition would negatively impact future children in the territory by sending them to different schools and by preventing neighbors from participating in common school activities or car pooling. The Board also determined that at least one parent would strongly consider sending his children to the public schools if he were certain that his children would attend the same schools as other children on his street, because all of the residents on the currently divided street identified themselves as one community and were members of the same park district.

¶ 31    The Board's finding was based, in part, on the testimony of Vincent Saviano, a resident of the territory and member of the committee of 10, who has a child attending parochial school. Saviano testified that the petition was not about the quality of the schools but about maintaining neighborhood cohesiveness and community and that he and the other parents wanted their children to attend the same school as the children down the block. He stated that all of the residents on the currently divided street identified themselves as one community and were members of the same park district. He testified that he would strongly consider sending his children to the public schools if he were certain that his children would attend the same schools as the other children on the block. He testified that denying the petition would negatively impact future children in the territory by sending them to different schools and by preventing neighbors from participating in common school activities.

¶ 32    A petitioning area must show that it has an established community of interest with the external and broader community that is served by the school districts to which annexation is sought. See *Pontiac Township High School District No. 90*, 183 Ill. App. 3d at 893; see also *Eble v. Hamilton*, 52 Ill. App. 3d 550, 553 (1977) (where the appellate court found that the petitioners failed to demonstrate that they would have naturally closer ties to the annexing district and showed only social and business ties to the annexing district). In this case, petitioners failed to present any concrete evidence that identified the territory with Districts 13 and 108. Petitioners did not present any evidence of children in the territory participating in any particular social, religious, or commercial activities. They did not present evidence suggesting that children in the territory participate in Girl Scouts and Boy Scouts, sports activities, or community-sponsored programs, that they are separated geographically in a way that would prevent the children from visiting their schoolmates, or that either they or the children would be more likely to participate in school and extracurricular activities in either District 13 or District 108.

¶ 33    By contrast, the evidence presented by Districts 15 and 87 showed that the true

community of interest of the subdivisions aligns with Districts 15 and 87. Even if the territory were detached from Districts 15 and 87, it would remain within the boundaries of the Bloomingdale park district and the Bloomingdale library district. Evidence also showed that the Bloomingdale park district has close ties with District 15. The park district currently uses both the Winnebago School and the Marquardt Middle School in District 15 for its sports programs and daycare programs. The park district also currently provides programs for students and staff at District 15's Winnebago School, Marquardt Middle School, and Blackhawk School. The local Cub Scout programs, which are held at the Winnebago School, are also more closely affiliated with District 15. As pointed out by Districts 15 and 87, school boundaries regularly result in neighbors attending different schools, but this fact alone does not address extracurricular participation in social, religious, or commercial activities or show how a petitioning area is identified with the school districts and the community to which annexation is requested.

¶ 34     Additionally, that a single child from a petitioning area might be able to attend the same school as other children on his street does not show how the petitioning area is identified with the school districts and the community to which annexation is sought. Petitioners failed to provide any definitive evidence to show that parents in the territory *actually* wanted their children to attend schools in Districts 13 and 108 and that they would *actually* send their children to those schools if the boundaries were changed. See *Carver*, 146 Ill. 2d at 360-63 (schools of the annexing district were farther away, there was no evidence that children had ties to the annexing district or that detachment and annexation would promote involvement in school or extracurricular activities, and the petitioners admitted that there was no difference in the quality of the districts).

¶ 35     In making its determination, the Board relied on Saviano's testimony that information provided by the school districts and the municipality about current district boundaries was misleading and could be confusing to a future family considering buying a house and moving into the territory. Saviano stated that he was originally confused as to which school districts his home was in. The evidence showed that Saviano's home and the other homes in the territory were always in Districts 15 and 87. We find no legal basis suggesting that such possible confusion is a proper factor to consider in a detachment proceeding.

¶ 36     Petitioners also had to show sufficient benefit to the "educational welfare" of any future students in the territory to justify the detachment and annexation (as no children from the territory currently were attending public schools). See *Carver*, 146 Ill. 2d at 358. "Educational welfare" has been broadly interpreted. *Carver*, 146 Ill. 2d at 359. A number of factors have been relied upon to define this concept, such as the degree to which the children in the detachment area naturally identify with the area to which annexation is sought (*Golf*, 89 Ill. 2d at 397-98); distances from the petitioners' homes to various schools (*Virginia Community Unit School District No. 64 v. County Board of School Trustees*, 39 Ill. App. 2d 339, 344-45 (1963)); the promotion of continuity in the educational experience (*School District No. 106 v. County Board of School Trustees*, 48 Ill. App. 2d 158, 162-63 (1964)); and the choices of parents and children in the detachment area (*City National Bank of Kankakee v. Schott*, 113 Ill. App. 3d 388, 391 (1983)).

¶ 37     The Board concluded that "the evidence showed that, if the petition was granted, the

amount of school bus traffic in the neighborhood would be reduced because all of the children on the street would attend the same schools, instead of multiple district busses traveling along the same neighborhood street, and that the distance future children would have to walk to bus stops would be improved and that children would not have to walk by heavily trafficked roads, thus improving the safety and educational welfare of the students."

¶ 38 We find that the Board's determination that transportation services would be safer and more efficient is against the manifest weight of the evidence. Petitioners argued that, if the petition were not granted, future students would be required to catch the school bus on Medinah Road, which would create a safety hazard to students due to the high level of traffic on the road. The only testimony presented by petitioners regarding the safety issue was Maria Gerardi's testimony that her daughter, a former high school student at District 87, had to walk quite a distance from her home in order to reach the bus stop on Medinah Road. She believed that her daughter was in danger when walking on Medinah Road. She testified that her daughter was almost hit by a car in 2005. Yet, Gerardi did not report this until 2007, when she talked to a clerical person at the Glenbard East High School office, who told her that nothing could be done about it. Additionally, during cross-examination, she acknowledged that she never talked to the superintendent about it and never requested that District 87 move the bus stop to a safer location. Her testimony also had nothing to do with the transportation of elementary school children. The record shows that District 15's bus routes for children in the territory would run directly into the subdivisions. Dr. Michael Meissen, superintendent of District 87, also testified that his administration would have been receptive to a request to relocate a bus stop to a safer area.

¶ 39 Defendants assert that, after weighing the credibility and content of the testimony of the witnesses on the bus transportation issue, the Board found in favor of Gerardi's testimony. Regardless of whom the Board chose to believe, petitioners did not present any evidence that future students would be required to catch a school bus on Medinah Road. No evidence was introduced to suggest that District 13 or District 108 would not establish bus stops in the territory or how they might handle future transportation needs for the subdivisions, whether there would be any danger to students if all districts started sending busses into the territory, or whether District 15 would ever put a bus stop for elementary school children outside the subdivisions on Medinah Road. Additionally, petitioners presented no evidence regarding reduced distances to bus stops or that Districts 13 and 108 would handle transportation any differently than Districts 15 and 87. No evidence was presented that multiple district busses traveling on the same streets would create any safety concerns. On the other hand, both superintendents from Districts 15 and 87 testified that they were reviewing routes in light of how much time it takes to get to school and ways to make sure that the routes would reflect where service is needed and that the busses would arrive safely at schools. In short, petitioners failed to present sufficient evidence to show that the transportation of students would improve if the petition were granted.

¶ 40 During oral argument, defendants cited *Golf*, arguing that a single safety issue is sufficient to grant a petition for detachment. *Golf* does not stand for this proposition. An examination of the record and the evidence, which the supreme court noted was set out in detail in the opinion of the appellate court, showed that the regional board properly

-12-

considered the statutory factors and that its grant of annexation was not contrary to the manifest weight of the evidence. *Golf*, 89 Ill. 2d at 398. The appellate court based its affirmance not only on the safety issue but also on other factors, including: (1) the possibility of increased participation in school and extracurricular activities; (2) the coordination of school programs with the community library; (3) the increased participation in community activities such as Little League and Boy Scouts; and (4) the benefit to the detaching district in that the temporary overcrowding caused by the closing of one school could be alleviated. *Board of Education of Golf School District No. 67 v. Regional Board of School Trustees*, 88 Ill. App. 3d 121, 130 (1980).

¶ 41     In their brief, defendants cited *Dukett v. Regional Board of School Trustees*, 342 Ill. App. 3d 635 (2003), for the proposition that, because no district would be affected in any substantial measure, the determination should turn solely upon the welfare of the children. While this proposition is a correct statement of the law, in *Dukett*, there was sufficient evidence to support a determination based solely on the welfare of the children. The Dukett children naturally identified with Winchester, the school to which their property would be annexed, because they attended school, church, scouts, and the 4-H Club there. The fact that their mother taught at Winchester was a great benefit to the children if they remained at Winchester themselves. Moreover, the Dukett children had been attending school at Winchester for the last several years, and remaining at Winchester would allow them to maintain the friendships and familiarity that they had in the district. The court believed that changing schools and friends would create a disruption and that to do so would not serve to benefit anyone. *Dukett*, 342 Ill. App. 3d at 642. Here, unlike in *Dukett* and *Golf*, petitioners did not present sufficient evidence to support their argument that the educational welfare of any future students would be improved by detachment.

¶ 42                                    SUMMARY

¶ 43     Based on the foregoing, we affirm the trial court's denial of the claim for declaratory judgment. We find, however, that the evidence was insufficient to support the granting of the petition. Rather, the evidence primarily demonstrated petitioners' personal desires to associate with the annexing district. "Although the wishes or conveniences of petitioning parents and their children are to be considered, more than the personal preference of petitioners must be shown to warrant a change in district boundaries." *Dresner v. Regional Board of School Trustees*, 150 Ill. App. 3d 765, 779 (1986) (citing *Golf*, 89 Ill. 2d at 400).

¶ 44     Affirmed in part and reversed in part.

-13-